34

UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN

JEFFREY LEE BONGA,

    Plaintiff,

v.s.

Badawi Abdellatif, MD,
William C. Borgerding DO,
Kenneth Jordan MD, Kyle W. Ploen PA
Victor L. Dominguez-Bem MD,
and Margaret A. Quellette PA,
sued in their individual
and official capacities,

    Defendant.

_____/

Case:2:16-cv-13685
Judge: Cox, Sean F.
MJ: Patti, Anthony P.
Filed: 10-13-2016 At 11:06 AM
PR BONGA V ABDELLATIF, ET AL (BG)

## 28 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT

Respectfully submitted:

**Jeffrey Lee Bonga #271635**
Acting Pro Se
Alger Correctional Facility
N6141 Industrial Park Drive
Munising, Michigan 49862

UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN

JEFFREY LEE BONGA,

    Plaintiff,                Case No.

v.s.                          Hon.

Badawi Abdellatif, MD,
William C. Borgerding DO,
Kenneth Jordan MD, Kyle W. Ploen PA
Victor L. Dominguez-Bem MD,
and Margaret A. Quellette PA,
sued in their individual
and official capacities,

    Defendant.

_____/

## COMPLAINT AND JURY DEMAND

This is a civil rights actions filed by Jeffrey Lee Bonga, a state prisoner, for damages and injunctive relief under 42 U.S.C.A §1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution.

### Jurisdiction

This Court has jurisdiction over plaintiff's claims of violation of Federal Constitutional rights under 28 U.S.C. § 1331(a) and 1334.

### Previous Lawsuits

Plaintiff, for this complaint and cause of action against the above named individual defendants, states and alleges as follows.

1. Plaintiff, Jeffrey Lee Bonga (hereafter references as Mr. Bonga and/or Plaintiff) has begun one other lawsuits in the Federal Court or State Court dealing with the same facts involved in this action or otherwise to my imprisonment.

### Place of Confinement

2. Plaintiff is currently confined at the Alger Correctional Facility,

1

located at N6141 Industrial Park Drive, Munising, Michigan 49862, County of Alger.

3. Plaintiff has presented the facts relating to this complaint in the Michigan Department of Corrections grievance procedure. (See attached Exhibit _____).

4. Mr. Bonga proceeded to all three steps of the Michigan Department of Corrections grievance procedure, in accordance to Michigan Department of Corrections Policy Directive (PD) 03.03.130. (see exhibit _____).

5. All grievances filed by Plaintiff have been denied at all three stages of the grievance process.

6. Mr. Bonga has also presented this issue to the Michigan Legislative Ombudsman and was also denied resolution.

7. At all times material herein Mr. Bonga was and still is a Citizen of the State of Michigan, and his principle place of residency being N6141 Industrial Park Drive, Munising, Michigan 49862, located in Alger County.

8. At all times material defendant Dr. Abdellatif, was and still is a Citizen of the State of Michigan, whose primary place of employment is with Corizan Health, a Sub-contractor for Medical Services for prisoners of the Michigan Department of Corrections, located at Macomb Correctional Facility, 34625 26 Mile Road, New Haven, Michigan 48048, in the County of Macomb.

9. At all times material defendant Dr. Borgerding, was and still is a Citizen of the State of Michigan, whose primary place of employment is with Corizan Health, Inc., a Sub-contractor for medical Services for prisoners of the Michigan Department of Corrections.

10. At all times material, defendant Dr. Kenneth Jordan, was and still is a citizen of the State of Michigan, whose primary place of employment is with Corizan health Inc., a sub-contractor for medical services for prisoner of the

2

Michigan Department of Corrections, located at Lakeland Correctional Facility, 141 First Street, Coldwater, Michigan 49036, in the County of Branch.

11. At all times material, defendant Dr. Victor L. Dominguez-Bem, was and still is a citizen of the State of Michigan, whose primary place of employment is with Corizan health Inc., a sub-contractor for medical services for prisoner of the Michigan Department of Corrections, located at Lakeland Correctional Facility, 141 First Street, Coldwater, Michigan 49036, in the County of Branch.

12. At all times material, defendant Kyle W. Ploen, was and still is a citizen of the State of Michigan, whose primary place of employment is with Corizan health Inc., a sub-contractor for medical services for prisoner of the Michigan Department of Corrections, located at Lakeland Correctional Facility, 141 First Street, Coldwater, Michigan 49036, in the County of Branch.

13. At all times material, defendant Margaret A. Quellette, was and still is a citizen of the State of Michigan, whose primary place of employment is with Corizan health Inc., a sub-contractor for medical services for prisoner of the Michigan Department of Corrections, located at Lakeland Correctional Facility, 141 First Street, Coldwater, Michigan 49036, in the County of Branch.

14. Mr. Bonga sues Defendant Dr. Abdellatif in his individual and official capacities.

15. Mr. Bonga sues Defendant William C. Borgerding DO in his individual and official capacities.

16. Mr. Bonga sues Defendant Kenneth Jordan in his official and individual capacities.

17. Mr. Bonga sues Defendant Victor L. Dominguez-Bem in his individual and official capacities.

18. Mr. Bonga sues Defendant Kyle W. Ploen in his individual and official capacities.

3

19. Mr. Bonga sues Defendant Margaret A. Quellette in her individual and official capacities.

Factual Allegations

20. On March 27, 2009, Plaintiff, Mr. Bonga underwent a CT scan, at Mercy Health Partners, Hackley Campus, Muskegon, Michigan 49443-3302, which was ordered by Dr. Ronald Graeser. It was noted that Mr. Bonga was diagnosed with L5 Spondylolsis.

21. On July 29, 2009, Mr. Bonga was diagnosed by David Dubriwny, D.O., of Mild degenerative disc disease changes and Scoliosis in his Thoracic vertebrae.

22. On February 02, 2011, Mr. Bonga had his Cervical and Thoracic spine x-rayed. The X-rays were viewed and interpreted by Dr. Maria Crumes, M.D., her findings of Mr. Bonga's Cervical spine was: "Tiny marginal spurring with slight loss of disc height level at C5-6 is demonstrated. If clinically indicated, CT would be of further diagnostic aid. Straightening of the normal cervical curvature is suggestive of paravertebral muscle spasm. Pre-vertebral soft tissues appear within normal limits. Impression: Degenerative Arthritis and Paravertebral Muscle Spasm"."... Dr. Crumes findings of Mr. Bonga's Thoracic spine is: "There is a mild compression fracture of T8 of indeterminate age. Radinonuclide bone imaging or CT would be of further diagnostic aid. There is no esteoyltic or osteoblastic change. A minimal dextroscoliosis of the mid-dorsal spine is noted. ... Impression: Degenerative Arthritis and Mild Compression Fracture of T8 of Indeterminate Age."

23. On December 19, 2011, Mr. Bonga underwent an Magnetic Resonance Imaging (MRI) of his Cervical and Thoracic spine. The impression of Mr. Bonga's cervical spine was: "1, disc herniation identified at C5-6 which is predominately extending into the neural foramen and lateral recesses causing

4

marked narrowing on the left and moderate narrowing on the right. There is some mild narrowing of the central canal, however, there is not a central canal stenosis. 2. There are small disc bulges seen at C3-4, 4 5 an 6-7." Mr. Bonga's Thoracic spine had small broad-based disc bulges identified at T5-6, T6-7, and T7-8. The impression was: "Mild degenerative disc disease changes T5-6 through T7-8."

24. On April 24, 2012, Mr. Bonga has his Cervical 5 through 7 anterior fusion performed by Dr. Harish Rawal M.D.

25. On Approximately November 23, 2013, Mr. Bonga started experiencing upper back pain due to utilizing a wheel chair. Mr. Bonga kited Health Services approximately 11 times, from November 23, 2013, through February 25, 2015, while at Lakeland Correctional Facility in regards to his excruciating upper back pains.

26. Mr. Bonga was seen by the following Medical staff for his back pain, on the following days: Registered Nurse (RN) Hope Peek on November 25, 2013; Nurse Rodgers, August 19, and 23, 2014; Nurse Matthew Rieke, on August 21, 2014, February 02, and 18, 2015; Nurse Jennifer Myers, November 02, 2014; Physicians Assistant (PA) Kyle Sparling on August 26, 2014; and PA Margaret Quellette on February 25, 2015; PA kyle W. Ploen on August 28, 2013; Dr. Syed M. Sohail on May 08, 2012, June 20, 2012, and August 08, 2012; Dr. Bhamini Sudhr on October 14, 2013; Dr. Victor Dominguez-Bem on March 04, 2014; Dr. Kenneth Jordan on February 05, 2013, and May 15, 2013.

27. On March 10, 2015, Mr. Bonga was transferred to Macomb Correctional Facility.

28. On March 16, 2015 Dr. Badawi Abdellatif examined Mr. Bonga and falsely stated in his medical record: examination is normal advised to continue same pain meds and exercise". Dr. Abdellatif erroneously indicated in Mr. Bonga's

5

medical file that Mr. Bonga told him that he "admits to lifting weights till 3 months ago. Dr. Abdellatif examined Mr. Bonga on April 02, 2015, July 02, 2015, and August 25, 2015, erroneously stating the same thing as he stated on March 16, 2015.

29. Mr. Bonga on March 16, 2015, did in fact inform Dr. Abdellatif that when he attempted to work out 3 months ago, he was unable to get out of his bunk for 3 days, due to the chronic upper and lower back pain." Dr. Abdellatif informed Mr. Bonga that he "would always have back pain and that he would just have to deal with it. There was nothing he could do for Mr. Bonga."

30. On March 17, 2015, Mr. Bonga filed a prisoner grievance requesting that he receive a proper diagnosis of his vertebral injuries e.g. MRI, Computerized Tomography Scan (CT-scan), and/or x-rays), and to immediately dispense the proper medication to treat all of Mr. Bonga's back pains caused by his extensive vertebral issues. Mr. Bonga did not achieve any resolutions to this grievance throughout the 3 steps of the Michigan Department of Corrections grievance process.

31. On May 05, 2016, Mr. Bonga was transferred from Macomb Correctional Facility to the Muskegon Correctional Facility.

32. On May 17, 2016, Mr. Bonga was examined by Barbara Bein P.A. and she ordered x-rays of Mr. Bonga's thoracic spine, lower spine, and neck spine. Subsequently, on May 18, 2016, these x-rays were taken by Stephanie Genereux at Brooks Correctional Facility.

33. On July 12, 2016, Mr. Bonga was transferred from Muskegon Correctional Facility to Alger Correctional Facility. Mr. Bonga was never informed by any medical staff at Muskegon Correctional Facility of the results of is x-rays prior to him being transferred to Alger Correctional Facility.

34. On July 14, 2016, Mr. Bonga was examined by Amy Westcomb PA.   PA

6

Westcombs Assessment/Plan for Mr. Bonga was: ...The pt is to start a trial of prednisone taper  Recent assault last month noted.  Upper and lower extremity EMGs requested.  Consider resubmitting PMC at some point."

35. In the first week of August 2016, PA Westcomb informed Mr.Bonga of the results of his x-rays.  She informed him that he had Spondyloltheisis Grade 2 to 3, and that his L5 was dislocated 15 mm.

36. After Mr. Bonga requested and paid for a copy of his x-rays, on August 16, 2016, Mr. Bonga received a copy of his x-ray results of his upper, lower and thoracic spine.  The x-rays indicated: "...Anterior spondylosis involves the vertebral body of C4. ... Anterior spondylosis involves the vertebral bodies throughout the thoracic spine. A very mild kyphotic curvature is seen in the proximal region.   ... A mild s-shaped scoliotic curvature is present. Impression: Early arthritic changes are present of the vertebral bodies of the thoracic spine. ... Mild facet joint arthritis changes are present throughout the lumbar spine. ... At L5/S1 level, there is a bilateral pars interarticularis defect with forward slippage of the L5 vertebral body by approximately 15 mm. In this  clinical setting, a grade 2 to grade 3 spondylolisthesis with bilateral spondylolysis is present.  Marked degenerative disk changes are present of the L5/S1 vertebral level. There is a very large spur of the S1 vertebral body. ... Impression: At least a grade 2 and possibly a grade 3 spondylolisthesis with bilateral spondylolsis at L5 level.  Advanced degenerative disc changes are present at L5/S1 level." These  x-rays were examined and interpreted by Michael Henderson, DO.

37. On August 18, 2016, Mr. Bonga was transported to UP Health Systems, located in Marquette, Michigan, for an EMG test.  The EMG test was given to him by Dr. David M. Gast MD.  Dr. Gast's impression of this test was "Bilateral moderate carpal tunnel syndrome, without evidence of denervation.   No

7

electrodiagnostic evidence of cervical or lumbar radiculopathy.   Examination reveals generalized poor effort, there is mild atrophy of the thenar eminence bilaterally.".

38. On September 20, 2016, Mr. Bonga was seen  by PA Westcomb in the health clinic located in his unit in Alger Correctional Facility.  PA Westcomb informed Mr. Bonga that the Pain Management Committee and Dr. William C. Borgerding DO, denied her request for him to have the medication Neurotins, and Pamelor, and the neurosurgeon consult. Dr. Borgerding did approve an MRI of Mr. Bonga's lumbar region only.  PA Westcomb informed Mr. Bonga that she would resubmit the surgeon consult and medication request after the MRI.

### Denial of Medical Care

39. It is clear from Mr. Bonga's x-ray, MRI and CT scans, that he has severe vertebral injuries.   Most of these injuries are degenerative in nature and therefore they do not improve with time, but in fact, get worse.

40.   When Mr. Bonga told Dr. Abdellatif of these injuries and the constant and severe pain that these injuries causes, Dr. Abdellatif informed him that due to his good muscle tone, Mr. Bonga was fine and that there was nothing wrong with him.  He also told him that he could perform any physical activity that he wanted to do, due to him being physically fit.

41. As Mr. Bonga's x-rays have shown, Dr. Abdellatif was deliberately indifferent to his serious medical needs by failing to treat and request further diagnostic testing to properly diagnose Mr. Bonga's vertebral injuries.   Mr. Bonga's serious medical needs should have been clear to him by simply reviewing Mr. Bonga's medical file and the results of the earlier performed diagnostic test results (MRI, CT-scan, x-rays, etc.).

42. Defendant Dr. Abdelatif was responsible for medical care generally and for arranging for specialized medical care outside of the prison.

43.    Defendant Dr. William C. Borgerding's function is to make uniform the practices of prescribing pain medication in the Michigan prisons. While he seeks to impose uniformity, he also seeks to have adequate pain medication prescribed for the medical condition in question.

44.    Dr. Borgerding has failed to prescribe the proper pain medication for Mr. Bonga. Mr. Bonga has informed every medical staff he has encountered, that the medication he receives is severely inadequate for his pain levels.  Mr. Bonga is unable to even walk the prescribed 20-40 minutes a day due to the extreme pain it creates.   Dr. Borgerding has never personally examined Mr. Bonga.  Dr. Borgerding has only reviewed Mr. Bonga's medical file to determine whether to approve or disapprove medical treatment.

45. The plaintiff is in extreme pain, and is unable to preform average daily functions due to the denial of adequate medical care for his serious medical needs. At no time has any medical provider that has examined Mr. Bonga has ever suggested taht Mr. Bonga is malingering.

46. On information and belief, if the plaintiff is not provided proper medical care as directed by PA Westcomb, he risks permanent disability.  Mr. Bonga's L5 ailments have become worse since first diagnosing him with spondylolsis in 2009.   Seven years later, it has degenerated to spondylolisthesis Grade 2 and possibly grade 3, with his L5 dislocated 15 mm.

<u>Exhaustion of Administrative Remedies</u>

47. The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants, except defendant William Borgerding DO.

48. At the time of this filing, Mr. Bonga is in the process of exhausting his remedies with respect to defendant Borgerding.  He is currently in Step I of the grievance process.

<u>Claims for Relief</u>

9

49. The failure of Defendant Abdellatif to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

50. The failure of defendant Borgerding to provide the proper medical treatment by approving the medications PA Westcomb requested (Neurotins, and Pamelor), and neurosurgeon consult constitutes deliberate indifference to the plaintiff's serious medical needs in violation of his Eighth Amendment to the United States Constitution.

51. The failure of Defendant Jordan to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

52. The failure of Defendant Dominguez-Bem to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

53. The failure of Defendant Ploen to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

54. The failure of Defendant Quellette to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

## Relief Requested

10

WHEREFORE, plaintiff, Jeffrey Lee Bonga, request that the court grant the following:

A. Issue a declaratory judgement stating that:

    1. Defendant Abdellatif's, Jordan, Pleon, Dominguez-Bem, Quellttte, and Borgerding's actions failing to provide adequate medical care for the plaintiff violated, and continue to violate, the plaintiff's rights under the Eighth Amendment to the United States Constitution.

B. Issue an injunction ordering Defendants Corizon Health, Inc., Borgerding, and/or their agents to:

    1. Immediately approve and dispense to Mr. Bonga the medications Neurotins, Ultrams, and Pamelor.

    2. Immediately arrange for the plaintiff to undergo MRI testing of his entire vertebra;

    3. Immediately arrange for the consultation of a neurosurgeon for the proper treatment for all of plaintiff's vertebral injuries;

    4. Carry out without delay the treatment directed by such medical providers.

C. Award compensatory damages in the following amounts:

    1. $100,000 jointly and severally against defendants Abdellatif, Borgerding. Jordan, Pleon, Dominguez-Bem, and Quellette and emotional injuries sustained as a resulting from their failure to provide adequate medical care to the plaintiff.

D. Award punitive damages in the following amounts:

    1. $100,000 each against defendants Abdellatif, Borgerding, Jordan, Ploen, Dominguez-Bem, and Quellette.

E. Grant such other relief as it m,ay appear that Plaintiff is entitled.

11

Dated: September 25, 2016


Respectfully submitted,

/s/

**Jeffrey Lee Bonga #271635**
Acting Pro Se
Alger Correctional Facility
N6141 industrial Park Dirve
Munising, Michigan 49862

12

UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN

JEFFREY LEE BONGA,

    Plaintiff,                Case No.

v.s.                        Hon.

Badawi Abdellatif, MD,
William C. Borgerding DO,
Kenneth Jordan MD, Kyle W. Ploen PA
Victor L. Dominguez-Bem MD,
and Margaret A. Quellette PA,
sued in their individual
and official capacities,

    Defendants.
_____/

## TABLE OF EXHIBITS

EXHIBIT A   Plaintiff's Michigan Department of Corrections Prisoner Griuevance
               Identifier No.: MRF-15-03-0540-12d

EXHIBIT B   Plaintiff's Michigan Department of Corrections Prisoner Grievance
               Identifier No.: 16-LMF-16-09-2601-12F1

EXHIBIT A    Plaintiff's Michigan Department of Corrections Prisoner Griuevance
             Identifier No.: MRF-15-03-0540-12d

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | | |

> **Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance
> procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Jeffrey Bonga | 271633 | MRF | 5-71-B | 03/16/15 | 03/17/15 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date?  03/16/15

If none, explain why.  I spoke to Dr. Abdellatif in the hopes of receiving proper treatment for my back issues.
But this was to no avail.  I was sent on my way without any proper diagnosis and treatment.  I therefore am filing
the instant grievance.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

**History of the Incident**

Mr. Bonga has extensive medical issues in regards to his spine.  Mr. Bonga's spinal issues are from the
Cervical to Lumbar region, which it to lengthy to detail in full.  In a short synopsis Mr. Bonga will explain his
extensive back issues.

Mr. Bonga has been experiencing back problems since 2009.  From 2009 through 2012, Mr. Bonga has been
diagnosed the following: C3-4 small disc bulge, degenerative arthritis, and paravertable muscle spasms; C4-5 small
broad-based disc bulge, degenerative arthritis  and para. vert. muscle spasms; T5-6 Disc bulge, mild degenerative
disc changes, degen. arthritis, Scoliosis; T6-7 broad Based disc bulge, mild degen. disc changes, degen. arthritis,
Scoliosis; T7-8 broad disc bulge, mild degen. disc changes, degen. arthritis, scoliosis, T-8 mild Compression
fracture; and L5 Spondylolysis with subluxation.  Mr. Bonga's C5-6, C-6-7 ware fused on March 24, 2012  due to two
herniated discs

SEE ATTACHED FOR CONTINUATION

**Page 1 of 5**

Grievant's Signature

RESPONSE (Grievant Interviewed?   ☐ Yes   ☐ No     If No, give explanation.  If resolved, explain resolution.)

_____   _____   _____   _____
Respondent's Signature       Date        Reviewer's Signature         Date

_____   _____   _____   _____
Respondent's Name (Print)   Working Title   Reviewer's Name (Print)   Working Title

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | | |
|---|---|---|---|
| | | Grievant's Signature | Date |

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

<u>CONTINUATION OF STEP I GRIEVANCE</u>

Mr. Bonga has been filing medical kites  in regards to his back since approximately six months to a year after he had his spine fused, complaining of severe back pain, and continuous progression of severity.

Mr. Bonga was seen by health provider shorty prior to him being transferred to Macomb Correctional Facility. PA Oulette informed Mr. Bonga that she would place him out on call-out a week after she seen him, to re-submit his Pain Management Committee paperwork to prescribe him pain medication that will help with his back pain.  Mr. Bonga was transferred a few days later without seeing anyone else.

On March 10, 2015, Mr. Bonga arrived at Macomb Correctional Facility.  Mr. Bonga was seen by Dr. Abdellatif on March 16, 2015. Dr. Abdellatif conducted a brief inadequate exam of Mr. Bonga's back.  After he was done, he informed Mr. Bonga that he was fine and that he could exercise and work out.  At which time, Mr. Bonga inquired as to ask the Doctor if he was cured.  Dr. Abdellatif simply stated, no, you just have to deal with the pain."  Dr. Abdellatif did this diagnosis without properly examining him, nor did he properly even review Mr. Bonga's medical history.  If he did, he would have realized all the damage and injuries Mr. Bonga has in regards to his back.

<u>Analysis of the Medical Issue</u>

Mr. Bonga asserts that Dr. Abdellatif is being deliberately indifferent to my medical needs, and thus causing Mr. Bonga to endure cruel and unusual punishment in violation of his 8th Amendment Rights guaranteed him under the United States and Michigan Constitution.

The deliberate indifference standard incorporates an objective and a subjective prong.  The inmate must establish (1) that the deprivation is "sufficiently serious" and (2) that the prison official has sufficiently culpable state of mind.  See Hathaway v Coughlin, 37 F3d 63, 66 (2nd Cir 1994).  A sufficient serious medical deprivation exist where there is a condition of urgency, one that may produce death, degeneration or extreme pain. Id. at 66.  A sufficient culpable state of mind on the part of prison official exist where the officials are aware of the prisoner's serious medical need and deliberately disregard it. Id. at 66; Dobbin v Artuz, 143 FSupp2d 292 (S.D.N.Y. 2001); Blakemoore v Kalamazoo County, 390 F3d 895-896 (6th Cir 2004).  Mr. Bonga has adequately demonstrated that the denial of examination by way of M.R.I., CT, and X-rays that would allow a proper diagnosis, by Dr. Abdellatif, (who performed none of these) Mr. Bonga's extensive spinal issues. In addition, for allowing Mr. Bonga to endure extreme pain.

A prisoner does not have to have verifiable medical evidence for medical care claims, where facts show an obvious need for medical care that any person would readily discern as required prompt medical attention by competent health care providers. Blakemoore, supra at 898. Mr. Bonga has not only demonstrated that a lay person would readily discern the need for prompt medical attention, Mr. Bonga's previous medical providers have even discerned this need.

Where the seriousness of a prisoners need for medical care is obvious to a lay person, the constitutional violation may arise.  This violation is not premised upon the detrimental effect of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm.  When prison officials are aware of a prisoners obvious and serious need for medical treatment of the condition for non-medical reasons, their conduct is causing the delay goes to the extent of the injury, not the existence of a serious medical condition. Blakemoore, supra at 898.  The longer Mr. Bonga is delayed proper treatment, the more permanent damage is done to his spine, and thus, a violation of his rights have been, and still is being conducted.

 Given the severity of Mr. Bonga's medical condition and refusal to provide adequate medication an to examine (M.R.I., CT, and/or X-ray) could lead a trier of fact to conclude that prison officials exposed Mr. Bonga to undue suffering and the threat of tangible residual injury. Scott v Ambani, 577 F3d 642, 648 (6th Cir 2009).

In evaluating a deliberate indifference claim, the Federal Court distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Westlake v Lucas, 537 F3d 857, 860 (6th Cir 1976). Where a prisoner alleges only that the medical care he received was inadequate, Federal Courts are generally reluctant to second guess medical judgements. Id.  However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.  Which is evident in the instant case. Id.; Alsoeugh v McConnell, 643 F3d 162, 169 (6th Cir 20110. In the instant case, Mr. Bonga has adequately demonstrated that the inadequate treatment of is back, amounts to no treatment at all.

Page 2 of 3

Whether a prisoner has suffered unduly by the failure to provide medical treatment is to be determined in view of the totality of the circumstances. In making this determination, the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner for failing to ½provide immediate medical attention. Westlake v Lucas, 537 F3d 857, 860 (6th Cir 1976).

The standard is not whether there is something easy that the doctors, with the benefit of hindsight, could have done, it is whether they knew of and disregarded an excessive risk to inmates health and safety. Williams v Mahra, 186 F3d 685, 692 (6th Cir 1995)(en banc)(external quotation marks and brackets omitted, emphasis in original). Doctor Abdellatif has been notified by Mr. Bonga and his medical history, and disregarded the excessive risk to Mr. Bonga's health and safety.

In these types of cases, the prisoner must allege and ultimately prove that he received grossly inadequate care in the face of a decision to take an easier but less efficacious course of treatment. Perez v Oakland County, 466 F3d 416, 424 (6th Cir 2006).

A delay in treatment may constitute a deliberate indifference if the delay exacerbated the injury or unnecessary prolonged an inmates pain. McGowan v Hulick, 612 F3d 636, 640 (7th Cir 2010). The length of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment. Id. at 640. Mr. Bonga's inability to properly function without serious excessive pain, and the ease of treatment (Pain medication and M.R.I., CT and/or X-ray).exemplifies the danger of the delay of his treatment.

It is important to note that the United States Supreme Court has recently expressed " that a prison that deprives prisoners basic sustenances including adequate medical care is incompatible with the concept of human dignity and has not place in civilized society". Brown v Plata,  131 SCt 1910 (2011).

## Conclusion

For all the reasons stated herein, the only resolution to this grievance is the proper diagnosis of Mr. Bonga's back problems and the immediate dispense of the proper medication to properly treat all his pain caused form his extensive back issues.

Dated: March 17, 2015

/s/
Jeffrey L. Bonga #271635

# Step I Grievance Response

| | |
|---|---|
| Grievance Number: | MRF2015030540L2D |
| Prisoner Name: | Bonga |
| Prisoner Number: | 271635 |

| Prisoner | ☒ | was | ☐ | was NOT interviewed. GIVE REASON: | |
|---|---|---|---|---|---|

## SUMMARY OF COMPLAINT:

Grievant states that on 3/15/2015 he spoke with Dr. Abd concerning treatment for back pain and was sent on his way without any proper diagnosis and treatment. Grievant states that he has an extensive medical issue regarding his spine extending back to 2009. Grievant states he was diagnosed with c3-4 small disc bulge, degenerative arthritis and para.vert. muscle spasms; T5-6 disc bulge, mild degenerative disc changes, degen. arthritis, scoliosis; T6-7 broad based disc bulge, mild degen. disc changes, degen. arthritis, scoliosis, T-8 mild compression fracture; and L5 spondylolysis with subluxation. Grievant states his C5-6, C6-7 were fused 3/24/2012 due to two herniated discs.

## INVESTIGATION INFORMATION

Grievant's Electronic Medical Record (EMR) was reviewed. Grievant was interviewed. Per EMR Grievant was seen by the Medical Provider on 3/16/2015 for chronic neck and back pains. The MP documented that the examination was normal and advised Grievant to continue same pain meds and exercise. Grievant was informed to call if he had any problems. Grievant is prescribed Tylenol 325mg four times a day as needed for pain. On 3/20/2015 Grievant submitted a Health Care Request Form (CHJ-549) requesting Pamelor to be renewed. A chart review was sent to the MP and answered on 4/2/2015. The MP stated in chart review that at last visit (3/16/2015) Grievant admitted he was lifting weights until three months ago and the MP stated he did not need Pamelor before, exam was normal and that Pamelor will not be renewed.

## APPLICABLE POLICY, PROCEDURE, ETC.

PD 03.04.100 Healthcare Services ; PD 03.02.130 Prisoner/Parollee Grievances

## SUMMARY

An extension was requested and approved for this grievance. Grievant Bonga per the MP your Pamelor will not be renewed and he advises you to continue taking Tylenol as ordered and exercise. Grievant Bonga you are encouraged to access healthcare using the Health Care Request form (CHJ-549) for any further medical requests. Grievance is denied.

| RESPONDENT NAME: | E. Parr-Mirza, RN | TITLE: | RN13 |
|---|---|---|---|
| RESPONDENT SIGNATURE: | E. Parr-Mirza | DATE: | 5-6-2015 |

| REVIEWER NAME: | H. Cooper, RN | TITLE: | HUM |
|---|---|---|---|
| REVIEWER SIGNATURE: | H. Cooper | DATE: | 5-6-2015 |

MICHIGAN DEPARTMENT OF CORRECTIONS                                              4835-4248  5/09
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**                                      CSJ-247B

Date Received by Grievance Coordinator        Grievance Identifier: | M | R | F | 1 | 5 | 0 | 3 | 0 | 0 | 5 | 4 | 0 | 0 | 1 | 2 | D |
at Step II: _____ 5/12/15 _____

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided
with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step
II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _____
**GRIEVANCE COORD.**       by **5/26/15** _____. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's
Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| JEFFREY BONGA | 271635 | MRF | 5-71-B | 3/16/15 | 5/12/15 |

**STEP II — Reason for Appeal**

Mr. Bonga incorporates by reference all facts and assertions in his Step I grievance. Step I Respondent E. Parr-
Kirze (hereafter referenced as Respondent) erroneously denied Mr. Bonga's Step I grievance. In light of the
inadequate and erroneous examination of Mr. Bonga by Dr. Abdellatif, Respondent and Dr. Abdellatif has failed to
discuss or contradict all the documented injuries to Mr. Bonga's spinal cord. All of Mr. Bonga's injuries, which
are from the top down: C3-4 very small disc bulge, degenerative arthritis, paravertebral muscle spasms; C4-5 — C6-7
are fused; T5-6, disc bulge, degen. arthritis, mild degen. disc changes, scoliosis; T6-7, disc bulge, mild degen.
disc change, scoliosis; T7-8, disc bulge, mild degen. disc changes, scoliosis; T8, mild compression fracture; and
L5, spondylolisis with sublaxation.

<u>SEE ATTACHED FOR CONTINUATION</u>

**STEP II — Response**

Date Received by
Step II Respondent:

Date Returned to
Grievant:

_____   _____   _____
Respondent's Name (Print)        Respondent's Signature          Date

**STEP III — Reason for Appeal**

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION:  White – Process to Step III;  Green, Canary, Pink – Process to Step II;  Goldenrod – Grievant

Grievance No.: MRF201503054012D

### CONTINUATION OF STEP II GRIEVANCE

Every one of the injures mentioned above do not improve with time, but in fact get worse.  Hence the word degenerative.   Mr. Bonga has complained of extreme back pain for months, if not, years!  Dr. Abdellatif has even failed to treat what has already been diagnosed by either X-ray, CT scan, or MRI.  Let alone properly diagnosis what is the current medical status of Mr. Bonga's spinal injuries.

It is important to note that in respondent's investigation information, she states that the Dr. Abdellatif placed in Mr. Bonga's chart that he admitted to lifting weights, until three months ago.  Mr. Bonga never said this to Dr. Abdellatif.  Mr. Bonga has not lifted weights for over a year.  And when Mr. Bonga did lift weights, it was more of stretching exercises then strength training.  Even then, after one day, Mr. Bonga could not get out of bed for several days due to the extensive back pain that was caused.  It is also important to note that Dr. Abdellatif erroneously informed Mr. Bonga that he is fine and that he could work-out, play sports and even run if he wanted to.  When Dr. Abdellatif told Mr. Bonga this, Mr. Bonga informed Dr. Abdellatif that if Mr. Bonga did any type of activities the Doctor said he could do, that Mr. Bonga is in extreme pain for days if not weeks.  In fact, Mr. Bonga is still enduring this extreme pain!  Dr. Abdellatif erroneously stopped Mr. Bonga's medication that was approved by the Pain Management Committee.

Therefore, Respondent erroneously denied Mr. Bonga's grievance and that the only proper resolution of this grievance is for Mr. Bonga to be properly diagnosed with a CT scan, CAT scan, or MRI, and to be properly treated for all of his spinal injuries.  It is a violation of Mr. Bonga's Eighth Amendment right to be free from cruel and unusual punishment by being forced to endure such extreme pain in his back and neck (which also shoots pain down his leg and arm).

Dr. Abdellatif is thereby being deliberately indifferent to Mr. Bonga's medical needs and thus, violating Mr. Bonga's state and federal right to be free from cruel and unusual punishment.  As the Sixth Circuit of the United States Federal Court has stated in Blakemoote v Kalamazoo County, 390 F3d 895, 898 (6th Cir 2004), "where the seriousness of a prisoners need for medical care is obvious to a lay person, the constitutional violation arises".  Mr. Bonga has adequately demonstrated that the denial of examination by way of MRI CT scan, and/or X-ray that would allow a proper diagnosis by Dr. Abdellatif (who requested none of these), and the treatment of his documented existing spinal injuries, is a federal and state constitutional violation, and must be rectified immediately.

Dated: May 12, 2015

**Jeffrey Bonga #271635**

# Step II Grievance Appeal Response

| | |
|---|---|
| Grievance Number: | MRF 15 03 0540 12d |
| Prisoner Name: | BONGA |
| Prisoner Number: | 271635 |

I have reviewed your Step I Grievance, the Step I Response, and your Step II Reason for Appeal.

**SUMMARY OF STEP I COMPLAINT:** Grievant complains that at an appointment with a Medical Provider on 03/15/2015 concerning treatment for his back, he was sent away without proper diagnosis or treatment.

**SUMMARY OF STEP I RESPONSE: Complete, see attached.**

**SUMMARY OF STEP II REASON FOR APPEAL:** Grievant indicates that this issue has not been resolved.

**SUMMARY OF STEP II INVESTIGATION:** Upon investigation of the EHR (electronic health record),
03/10/2015- Transfer to MRF with prescription for Elavil to be taken as needed, PMC approved, expiration date of 03/14/2015 MP appointment made.
03/14/2015- Elavil prescription expired.
03/16/2015- Medical Provider appointment, interview and physical examination with review of medical history and current medication. Assessment/Plan; Spondylosis, cervical Good.
- Same Plan comments: Stated chronic neck and back pains , had surgery to neck[fusion 2012], examination is normal advised to continue same pain meds and exercise, call for any problems.

**CONCLUSION: Evidence**
- • Policy 03.04.100 Health Care Services
- • Operating Procedure 03.04.100C Pharmacy Services and Medication Management
- • Policy 03.02.130 Prisoner/Parolee Grievances
- • The issue presented in this grievance has been reviewed by health care staff. Prisoners shall be provided with a continuum of medically necessary health care services that are supported by evidence based medical research. Grievant is being evaluated, treated, diagnostic testing conducted and monitored by the Medical Provider (MP). The MP is responsible for determining the most appropriate course of treatment for his patients taking into consideration all information available. A disagreement with the medical judgment of the MP does not support a claim that the treatment plan is inappropriate. Additional issues presented upon appeal to Step II are not related to the original issue being grieved; therefore they will not be addressed in this response.

Grievant is encouraged to access health care through the kite process to address any current health care concerns.
- • Grievance: Denied.

| | |
|---|---|
| **RESPONDENT NAME:** Laura Kinder, RN | **TITLE:** Clinical Administrative Assistant<br>Southern Region Health Care Administration |
| **RESPONDENT SIGNATURE:** *Laura Kinder, RN* | **DATE:** 05/27/2015 |

MICHIGAN DEPARTMENT OF CORRECTIONS                                   4835/4248  5/09
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**                              CSJ-247B

|   |   |   |   |   |   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M | R | F | 1 | 5 | 0 | 3 | 0 | 0 | 5 | 4 | 0 | 0 | 1 | 2 | D |

Date Received by Grievance Coordinator        Grievance Identifier:
at Step II:    _5/12/15_
                5-12-15   (EM)

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _____
**GRIEVANCE COORD.**      by **5/26/15**      . If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | T | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|---|
| JEFFREY BONGA | 271635 | | MRF | 5-71-B | 3/16/15 | 5/12/15 |

**STEP II — Reason for Appeal**

Mr. Bonga incorporates by reference all facts and assertions in his Step I grievance.  Step I Respondent E. Perr-Mirza (hereafter referenced as Respondent) erroneously denied Mr. Bonga's Step I grievance, in light of the inadequate and erroneous examination of Mr. Bonga by Dr. Abdellatif. Respondent and Dr. Abdellatif has failed to discuss or contradict all the documented injuries to Mr. Bonga's spinal cord.  All of Mr. Bonga's injuries, which are from the top down: C3-4 very small disc bulge, degenerative arthritis, paravertebrae muscle spasms; C4-5 - C6-7 are fused; T5-6, disc bulge, degen. arthritis, mild degen. disc changes, scoliosis; T6-7, disc bulge, mild degen. disc change, scoliosis; T7-8, disc bulge, mild degen. disc changes, scoliosis; T8, mild compression fracture; and L5, spondylolisis with sublaxation.

<u>SEE ATTACHED FOR CONTINUATION</u>

**STEP II — Response**

*See attached*

| | Date Received by Step II Respondent 4 |
| | 05-27-2015 |

LAURA KINDER  CAA      (signature) CAA   05/27/2015     Date Returned to Grievant: 6/3/15
Respondent's Name (Print)   Respondent's Signature   Date

**STEP III — Reason for Appeal**

Mr. Bonga incorporates by reference all facts and assertions in his Step I & II grievances on this issue.  Step II respondent has erroneously denied Mr. Bonga's grievance for several reasons, which Mr. Bonga will address below.

<u>SEE ATTACHED FOR CONTINUATION</u>

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III;  Green, Canary, Pink – Process to Step II;  Goldenrod – Grievant

CONTINUATION OF STEP III GRIEVANCE

IDENTIFIER No.:MRF 15 03 0540 12d

Respondent RN L. Kinder states in her Conclusion that the issue presented in this grievance has been reviewed by health care staff. She has failed to state it has been reviewed by <u>competent</u> health care staff. She has done this for a reason. Any competent health care staff would recognize the seriousness of Mr. Bonga's Spinal Cord injuries, and by "supported medical research" would determine that Mr. Bonga needs serious medical treatment that he is been denied. It is also important to note that Respondent erred when she stated that Mr. Bonga raised additional issues that are not related to the original issue being grieved. Mr. Bonga has not raised addition issues. Nor has Respondent explained or even stated what these new issues are that Mr. Bonga presented in his step II grievance. Respondent has erred when she states that this grievance is a "disagreement with medical judgement of the MP." Even a lay person can see that Mr. Bonga needs medical treatment and proper diagnosis for his spinal cord injuries. Mr. Bonga's spinal cord injuries are well documented. He has had an couple of MRI's and a CT Scan of his spinal cord. And they document the severity of his injuries. They all document that all his injuries do not get better with time, but instead, worsen over time.

For instance, "[O]setleoarthritis causes general wear and tear that erodes the cartiliage, leaving the bone exposed. As bone begins to rub on bone, changes occur that lead to osteophyte formation and sclerotic bone." 2-15 <u>Lawyer's Medical Cyclopedia</u> § 15.9 (2014). Osteophytes are bone spurs. Mr. Bonga has 7 vertebrae that have osteoarthritis. Which means that Mr. Bonga's osteoarthritis has already progressed.

Mr. Bonga has also been diagnosed with Thoracic degenerative disc changes "that is often associated with pain and stiffness, which may begin as early as age 30 or 40, and progress with age and significantly affect the lower lumbar spine" 4-13 <u>Attorney's Textbook of Medicine</u>, 13A.05 (2) (Third Edition). In the same chapter, it is stated that "The most common devastating complication of non-operative treatment is the development of neurologic deterioration." <u>Id</u>. at P. 13A.50.

5-15 <u>Attorney's Textbook of Medicine</u> (3rd Ed.) P. 15.17 states: "After the fourth decade of life, there is a decline in the ability of the disc to expand because the aging process and normal daily stress will cause the annular fibers to gradually enlarge and lose their elasticity (Ball and Benzel, 1996). The loss of height resulting from excessive narrowing of the intervertebral disc space can result in friction between the vertebrae during spinal movement. This friction can lead to the building of reactive ostephytes (bone spurs). Ostepohytes may also develop in response to the encroachment of the anterior and posterior margins of the disc onto the vertebral bodies. The posterior spurs can eventually infringe upon, and subsequently narrow, the spinal canal (Gorman and Hodak, 1997). Ostephytes are especially common in individuals whose occupations involve heavy lifting. (Fraser, et al., 1997)". Mr. Bonga's symptoms met all this criteria, which means that his spinal injuries have become worse and not better. All this information is well documented and should be well known for and medical professional. Thus, this grievance is not based on a difference of opinion, but instead well known through medical research and textbooks. All this information is even evident to even a lay person. And thus, is in violation of Mr. Bonga's State and Federal Constitutional rights to be free from cruel and unusual punishment.

It is important to note that these are just examples of one of Mr. Bonga's spinal cord ailments. Of which is the least severe of them all. The bulging discs, scoliosis, and spondyloisis deteriorate even worse then osteoarthritis.

All of Mr. Bonga's assertions, from his step I, II, and now this Step III grievance establishes that Dr. Abdellatif is being deliberately indifferent to Mr. Bonga's medical needs by failing to treat his well documented spinal cord injuries and by failing to properly diagnosis the deterioration of his spinal cord, by way of MRI or CT scan. Which by the way, is the only resolution to this grievance of Mr. Bonga being properly treated for his chornic and extreme back pain that even today he is being forced to endure, and to properly diagnosis his current condition by MRI or CT scan. All of which must be done immediately.


Dated: June 07, 2015                              /s/ _____

                                                  **Jeffrey Bonga #271635**

*S. 71B*

## Step III Grievance Response

**JEFFERY BONGA**          271635

**MRF**     15030540

Grievant alleges the Medical Provider was deliberately indifferent to his concerns of pain during examination on March 16, 2015.

All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. The Medical Provider is the medical authority and is responsible to manage the treatment plan of the patient. Disagreement with the treatment plan does not constitute a denial of care.

Grievance appeal denied.

Response of Bureau of Health Care Services                    Date:      8/4/2015

Approved: *R. Harbaugh RN2*                                          Date: *8/5/15*
                   R. Harbaugh, RN

_____                              AUG 1 0 2015

Richard D. Russell  Manager, Grievance Section Office of Legal Affairs          Date Mailed

Ref. #        22874

C:        Warden

          Regional Health Care Administrator          Southern
          Grievant

EXHIBIT B    Plaintiff's Michigan Department of Corrections Prisoner Grievance
             Identifier No.: 16-LMF-16-09-2601-12F1

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____     Grievance Identifier: | | | | | | | | | | | | | | |

---

**Be brief and concise in describing your grievance issue.**  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Jeffrey Conja | 271535 | LRF | | 03/20/15 | 03/20/15 |
| | | | | | 03/20/15 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _____
If none, explain why.

I spoke to PA Amy Westcome today, to no avail.  I am still being denied proper pain medication

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

<u>History of the Incident</u>

I have been enduring sever back pain for several years.  On April 24, 2012, I had my C3-C6, and C7 fused together.  Since 2012, my spine has been diagnosed with the following: I have spurs on his vertebrae, degenerative arthritis in all of his vertebrae, spondylolisis in his C4, and L5, degenerative disc disease in his lumbar, thoracic and cervical spine, and paravertebral muscle spasms, and scoliosis and kyposis in his thoracic spine.

<u>SEE ATTACHED FOR CONTINUATION</u>

_____
Grievant's Signature

---

RESPONSE (Grievant Interviewed?  ☐ Yes  ☐ No     If No, give explanation.  If resolved, explain resolution.)

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Respondent's Signature | Date | Reviewer's Signature | Date |
| _____ | _____ | _____ | _____ |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | _____ | _____ |
|---|---|---|---|
| | | Grievant's Signature | Date |

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One: Goldenrod — Grievant

## CONTINUATION OF STEP I GRIEVANCE

I was first diagnosed with Lumbar problems in 2009. It was discovered then that I had spondylolsis in my L5. On May 18, 2016, x-rays were taken of my entire spine. In these x-rays it was discovered that the spondylolsis in my L5 has progressed to Spondylolisthesis Grade 2 and possibly a grade 3. It was discovered in these x-rays that I had forward slippage of my L5 vertebral body of approximately 15 mm.

On July 14, 2016, PA Amy Westcomb examined me. At the conclusion of her examination she requested an EMG test be given to me, to determine if I had any nerve damage due to my back problems. When she requested this test, she was unaware of the x-ray results diagnosing me with spondylolisthesis grade 2 or 3. PA Westcomb informed me of this diagnosis on July 28, 2016. On August 18, 2016, I went to UP health Systems in Marquette, and was given an EMG test. The results of that test was that I did not have any cervical or lumbar radiculopaty. Which means my back was not causing nerve problems. After PA Westcomb was given the results of the EMG test, she requested for me a neurosurgeon consult, and the medication of Neurontins and osmaton. This pain medication request was given to the Pain management Committee.

PA Westcomb informed me today, September 20, 2016, that Dr. Borgeding and the PMC denied my medication and neurosergeon consult. But they did approve an MRI be given to me for my lumbar region. PMC's recommandation was the same as the one April 15, 2016. Which was tylenol, self message, Heat, ROM, stretching exercises and walking up to 20-40 minutes a day.

I, and numerous medical staff (nurses, physician assistants, and others) have all noted that this recommended course of treatment is not adequate to treat my symptoms and ailments. Even a lay person can see that this is not only grossly inadequate treatment, it is a denial of treatment of my medical symptoms and ailments.

### Analysis of the Issue

Dr. Borgeding and PMC's denial of Neurontins and pamelor can only be determined to them being deliberating indifferent to my medical needs. And thereby constituting a serious medical deprivation that creates an Eighth Amendment to the U.S Constitution violation of Mr. Bonga being entitled to be free from cruel and unusual punishment. Farmer v Brennan, 511 US 825 (1994); See also: Scott v Ambani. 577 F3d 642 (6th Cir 2009)

The deliberate indifferent standard incorporates an objective prong and a subjective prong. The inmate must establish (1) that the deprivation is "sufficiently serious", and (2) that the prison officials has sufficiently culpable state of mind. Hathaway v Coughlin, 37 F3d 63, 66 (2nd Cir 1994). A sufficient serious medical deprivation exists where there is a condition of urgency, one that my produce death, degeneration or extreme pain. Id at 66. Mr. Bonga's spinal inflictions are both degenerative and cause extreme pain.

A sufficiently culpable state of mind on the part of prison officials exist where the officials are aware of the prisoner's serious medical need and deliberately disregard it. Id at 68; See also: Dobbin v Artuz, 143 FSupp2d 292 (S.D.N.Y. 2001); and Blakemore v Kalamazoo County, 390 F3d 895 (6th Cir 2004). Dr. Borgeding and the rest of PMC has been aware of my serious medical needs as shown by their refusal to approve medications my medical providers have requested. Dr. Borgeding and PMC have denied me medical care in April, and September 2016.

"Where the seriousness of a prisoner's need for medical care is obvious to a lay person, the constitutional violation may arise. This violation is not premised upon the detrimental effect of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoners obvious and serious need for medical treatment of that condition is denied for non-medical reasons, their conduct in causing delay created the constitutional infirmity. In such cases, the affect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blakemore, supra at 899. In the instant case, the effect of delaying treatment is obvious even to a lay person. In 2009, I was diagnosed with spondylolsis in my L5. Now I am diagnosed with Spondylolisthesis Grade 2 or 3. My L5 has dislocated 15 mm due to non treatment of my medical condition.

The Eighth Amendment forbids prison official,s from unnecessarily and wantonly inflicting pain on an inmate by acting with caliberate indifference towards his serious medical needs. Blakemore, supra at 896 (quoting Estelle v Gamble, 429 US 97 (1976); see also Jones v Muskegon County, 625 F3d 941 (6th Cir 2010)

"If the medical need involves minor maladies or non-obvious complaints of a serious need for medical care. Blakemore, 390 F3d at 898, the inmate must place verifying medical evidence in the record or establish the detrimental effect of the delay in medical treatment. Napier v Madison County, Kentucky, 238 F3d 739, 742 (6th Cir 2001)" Johnson v Karnes, 398 F3d 868, 874 (6th Cir 2005). Verifying medical evidence does not apply to medical care claims where facts show an obvious need for medical care that a layman would readily discern as required prompt

<u>CONTINUATION OF STEP I GRIEVANCE</u>

medical attention by competent health care providers. Blackmore, supra at 898.  This applies to the instant case. Any laymen can discern that Mr. Bonga needs medical attention.

Mr. Bonga's case is similar to the facts of <u>Scot v Ambani</u>, 577 F3d 642 (6th Cir 2009).  The Court held "Given the severity of Scott's prior medical condition and refusal to provide pain medication and to examine his other symptoms for 3 months could lead a trier of fact to conclude that prison officials exposed Scott to undue suffering or the threat of tangible residual injury. <u>Id</u> at 648.

Dr. Borgeding and PMC recommendations for the treatment of Mr. Bonga's sever back problems by the denial of the medications requested by PA Westcomb is not an allegation of a disagreement of medical care.  Dr. Borgeding and PMC treatment amounts to no care at all.  As the 6th Circuit has held: [I]t is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all. <u>Westlake v Lucas</u>, 537 F2d 857, 860 (6th Cir 1976)" <u>Alspaugh v McConnell</u>, 643 F3d 162, 169 (6th Cir 2011).  This applies to the instant case.

A prison need not prove complete failure to treat; deliberate indifference may be shown where access to medical staff is meaningless because the staff does not render competent care. <u>Ortiz v City of Imperial</u>, 884 F2d 1312, 1314 (9th Cir 1989); <u>Lavender v Lampert</u>, 242 FSupp2d 821 (D. Or. 2002).  Giving Mr. Bonga tylenol and telling him to exercise is not competent care due to the extensive spinal ailments Mr. Bonga is currently enduring due to the lack of medical treatment of Dr. Borgeding and PMC.

The more serious the medical need of the prisoner and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant. <u>McGuckin v Smith</u>, 974 F2d 1050, 1061 (9th Cir 1992)   There are several federal cases that establishes the denial of prescribing proper pain medication is a violation of a prisoner's 8th Amendment right to be free from cruel and unusual punishment. Here are just a few federal cases of denial of pain medication: <u>Scott v Ambani</u>, supra; <u>Dobbin v Artuz</u>, supra; <u>Hurt v Birkett</u>, 565 FSupp2d 620 (E.D. Mich 2008), etc.   Mr. Bonga has shown that Dr. Borgeding and PMC's refusal to approve the medications PA Westcomb recommended for the treatment of Mr. Bonga constitutes them violating Mr. Bonga's Eighth Amendment right to be free from cruel and unusual punishment.

<u>Conclusion</u>

It is for the reasons stated above that Dr. Borgeding and PMC is violation Mr. Bonga's 8th Amendment right by being deliberately indifferent to my serious medical needs, thereby causing Mr. Bonga to endue cruel and unusual punishment.   The only resolution to this issue is for the immediate approval of the medications Neurotins and Pamelor be give to Mr. Bonga to properly treat his already diagnosed medical conditions.

Dated: September 20, 2016

/s/

Jeffrey L. Bonga #271635

**Michigan Department of Corrections**
**FIRST STEP GRIEVANCE RECEIPT**

DATE:        9/23/2016

TO:        **BONGA**              271635          LOCATION:   **LMF**        S-208

FROM:      **Grievance Coordinator:  M. Bonevelle**

SUBJECT:   Receipt for Step I Grievance

**Grievance Identifier:    LMF    /    2016 /    09 /  2601    /  12F1**

**Issue:**       medication/lack of

**Received:**        9/23/2016

**Date Due:**        10/14/2016

Your Step I grievance was received as indicated above. You should receive a response no later than the due date listed above. If you have not received a response by this date and have not received an extension, you may submit a written request for an appeal form to this office. You will need to note, on your request, the grievance identifier as listed above.

**Jeffrey Lee Bonga #271635**
Alger Correctional Facility
N6141 Industrial Park Drive
Munising, Michigan 49862

October 04, 2016

Clerk of the Court
United States District Court
Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, Michigan 48226

Re:      **Jeffrey Lee Bonga v Badawi Abdellatif, Et al.**
         **Case Number: New Action**

Dear Court Clerk:

    Enclosed please find one original and one copy for the Court, and one copy
for each defendant, the following:

    - 28 U.S.C. § 1983 Civil Right Complaint;
    - Summons for Each Defendant (6) Total

And one original and one copy of the following:

    - Motion to Proceed In Forma Pauperis;
    - Affidavit in Support of Motion to Proceed In Forma Pauperis;
    - Motion for Appointment of Counsel;
    - Memorandum of Law in Support of Motion for Appointment of Counsel;
    - Motion for Preliminary Injunction;
    - Memorandum of Law in Support for Preliminary Injunction;
    - Proposed Order to Show Cause for Preliminary Injunction.

    I am an indigent prisoner who can not provide the proper amount of copies,
would you please file them for me.  I thank you for your time and cooperation in
this matter, and I anxiously await your response.

                                    Sincerely,

                                    /s/

                                    Jeffrey Lee Bonga #271635
                                    Acting Pro Se

cc: file

Case 2:16-cv-13685-SFC-APP   ECF No. 1, PageID.33   Filed 10/13/16   Page 33 of 34

**Clerk of the Court**
United States District Court
Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, Michigan 48226

**Jeffrey L. Bonga #271635**
Alger Correctional Facility
N6141 Industrial Park Drive
Munising, Michigan 49862

# CIVIL COVER SHEET FOR PRISONER CASES

| Case No. 16-13685 | Judge: Sean F. Cox | Magistrate Judge: Anthony P. Patti |
|---|---|---|

| Name of 1st Listed Plaintiff/Petitioner:<br><br>Jeffrey Bonga | Name of 1st Listed Defendant/Respondent:<br><br>Badawi Abdellatif, et al. |
|---|---|
| **Inmate Number:** 271635 | **Additional Information:** |
| **Plaintiff/Petitioner's Attorney and Address Information:** | |
| **Correctional Facility:**<br>Alger Maximum Correctional Facility<br>Industrial Park Drive<br>P.O. Box 600<br>Munising, MI 49862<br>ALGER COUNTY | |

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

---

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ Yes     ☒ No
   ➢ If yes, give the following information:

   Court: _____

   Case No: _____

   Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☐ Yes     ☒ No
   ➢ If yes, give the following information:

   Court: _____

   Case No: _____

   Judge: _____

MIED (Rev. 07/06)  Civil Cover Sheet for Prisoner Cases