UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LEE BONGA,

                    Plaintiff,                    Case No. 2:16-cv-13685
                                                District Judge Sean F. Cox
v.                                       Magistrate Judge Anthony P. Patti

BADAWI ABDELLATIF,
M.D., et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT JORDAN'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (DE 56)

**I.     RECOMMENDATION**:  The Court should **GRANT** Defendant Jordan's July 19, 2017 motion to dismiss pursuant to Fed. R. Civ. P. 12(c) and **DISMISS WITH PREJUDICE** Plaintiff's claims against this Defendant.

**II.    REPORT**

    **A.     Plaintiff brings this lawsuit against six defendants.**

    Plaintiff Jeffrey Lee Bonga (#271635) is currently incarcerated at the Michigan Department of Corrections (MDOC) Thumb Correctional Facility (TCF). (DE 68.)  On October 13, 2016, while incarcerated at the MDOC's Alger Correctional Facility (LMF) in Michigan's upper peninsula, Plaintiff filed the instant lawsuit, *pro se,* against six defendants:  **(1-4)** Kenneth Jordan, Victor

1

Dominguez-Bem, M.D., Kyle Ploehn, P.A., and Margaret Ouellette, P.A., each of Lakeland Correctional Facility (LCF); **(5)** Badawi Abdellatif, M.D., of Macomb Correctional Facility (MRF); and, **(6)** William C. Borgerding, whose location is not provided.  (DE 1 ¶¶ 8-13; *see also* DE 11, DE 17.)

The facts underlying Plaintiff's complaint begin with the alleged events of 2009 – continue through his March 2015 transfer from LCF to MRF, through his May 2016 transfer to Muskegon Correctional Facility (MCF), and through his July 2016 transfer to LMF – and conclude during September 2016.  (DE 1 ¶¶ 20-38.) Plaintiff sues Defendants in their individual and official capacities, alleging "denial of medical care."  (DE 1 ¶¶ 14-19, 39-46.)  He seeks declaratory, injunctive, compensatory and punitive relief.  (DE 1 at 13.)

### B.    Pending matters

Judge Cox has referred this case to me for all pretrial proceedings.  (DE 9.) Currently before the Court are several motions:

- the remainder of Plaintiff's October 13, 2016 motion for preliminary injunction (DE 3) following the Court's order adopting and accepting my report & recommendation in part and returning the matter to me in part (DE 33, DE 59)

- Plaintiff's motion to amend complaint (DE 36), along with the simultaneously-filed proposed first amended complaint (DE 37)

- Defendants Dominguez-Bem, Ouellette, and Ploehn's motion for summary judgment based solely on the failure to exhaust administrative remedies (DE 43), regarding which a response, a reply, and a sur-reply have been filed (DEs 50, 54, 62)

2

- Defendant Borgerding's motion for summary judgment (DE 52), which has been fully briefed (DEs 53, 60, 61)

- Defendant Jordan's motion to dismiss and/or for summary judgment (DE 56), which has been fully briefed (DEs 57, 58, 63, 64)

This report addresses Defendant Jordan's motion.

### C.    Fed. R. Civ. P. 12

Defendant Jordan seeks dismissal with prejudice of the claims against him based on Fed. Rules Civ. P. 12(b)(6) and/or 12(c), or, alternatively, based on Fed. R. Civ. P. 56(a).  To the extent the motion "is predicated upon the affirmative defense of statute of limitations and does not involve matters outside of the pleadings[,]" it "is properly considered under the standards applicable to a motion for judgment on the pleadings under Rule 12(c) rather than Rule 12(b)(6)[.]" *Littlejohn v. Mackinac Fin. Corp.*, No. 2:06-CV-20, 2006 WL 2039981, at *2 (W.D. Mich. July 19, 2006).

"The standard of review applicable to a motion for judgment on the pleadings under Fed.R.Civ.Pro. 12(c) is the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)."  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–512 (6th Cir. 2001).  "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can

prove no set of facts in support of his claim that would entitle him to relief." *Ziegler*, 249 F.3d at 512.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

4

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[1]

### D.    Analysis

#### 1.    Plaintiff's allegations against Defendants span a period of time when Plaintiff was incarcerated at multiple MDOC facilities.

According to Plaintiff, he underwent a "cervical 5 through 7 anterior fusion"

on April 24, 2012.  (DE 1 ¶ 24.)  Plaintiff's claims against Defendants Jordan,

Ploehn, Ouellette and Dominguez-Bem appear to relate to intermittent treatment

for Plaintiff's back pain at LCF between February 2013 and February 2015.  (DE 1

¶ 26.)  Plaintiff's claims against Defendant Abdellatif appear to relate to the events

between March and August 2015 at MRF.  (DE 1 ¶¶ 28-29.)  Finally, Plaintiff's

claims against Defendant Borgerding appear to relate to the events of September

2016 while Plaintiff was incarcerated at LMF.  (DE 1 ¶ 38.)

#### 2.    Plaintiff's alleges Eighth Amendment deliberate indifference to serious medical needs as to Defendant Jordan.

---

[1] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (Cohn, J.) (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

Plaintiff describes Dr. Kenneth Jordan as employed by Corizon Health, Inc. ("Corizon") and located at LCF.  (DE 1 ¶ 10.)  However, according to Jordan, he was providing medical care for LCF prisoners through an independent contractor, Weatherby Locums, Inc.  (DE 35, DE 56 at 9.)

In any event, Plaintiff alleges that he was seen by Defendant Jordan on February 5, 2013 and May 15, 2013 for back pain, apparently during his incarceration at LCF.  (DE 1 ¶¶ 25-26.)  Plaintiff claims that Defendant Jordan's failure "to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution."  (DE 1 ¶ 51.)  Plaintiff sues Defendant Jordan in his official and individual capacities and seeks various forms of relief.  (*See* DE 1 ¶¶ 16, DE 1 at 13.)[2]

### 3.   Plaintiff's claims against Defendant Jordan are barred by the statute of limitations.

The parties agree that Plaintiff's Section 1983 claims are subject to the 3-year statute of limitations for personal injury set forth in Mich. Comp. Laws § 600.5805.  (DE 56 at 12-14, DE 63 at 5-6.)  *See Wilson v. Garcia*, 471 U.S. 261

---

[2] These allegations are similar to those set forth in Plaintiff's proposed first amended complaint.  (*Compare* DE 1 ¶¶ 10, 16, 26, 51, DE 1 at 13; DE 37 ¶¶ 14, 22, 34, 87, DE 37 at 20-21.)  However, the proposed first amended complaint contains an additional paragraph which will be addressed elsewhere in this recommendation.  (*See* DE 37 ¶ 74.)

(1985), *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986).  However, they disagree as to when Plaintiff's claim against Defendant Jordan accrued.

"Under federal law as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred."  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (citing *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir.1991)).  *See also Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) ("In actions brought under § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action.") (citing *Kelly v. Burks,* 415 F.3d 558, 561 (6th Cir.2005)).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

The Court should conclude, in agreement with Defendant Jordan, that Plaintiff's claims against him accrued, at the latest, <u>on May 15, 2013</u>.  (DE 56 at 14-15.)  As noted above, Plaintiff's claims against Defendant Jordan are based upon an alleged failure to "provide adequate medical treatment for Mr. Bonga's vertebral injuries," and it seems that the only specific mention of visits with Jordan for back pain occurred on February 5, 2013 and May 15, 2013.  (DE 1 ¶¶ 26, 51.) Without more, Defendant Jordan is correct that "it is difficult to tell what Plaintiff is claiming Dr. Jordan did or failed to do as a result of his two examinations."  (DE

56 at 14.)  More to the point, from the face of the complaint and in Plaintiff's own words, the claims against Defendant Jordan are based on the events of two specific dates.  If Plaintiff has a complaint about the treatment he received on those visits, he knew or had reason to know on those dates.  *Collyer*, 98 F.3d at 220 – each of which was more than three years prior to the October 13, 2016 filing of this lawsuit.

To be sure, as to Defendant Jordan, Plaintiff's May 26, 2017 proposed first amended complaint contains the following, additional paragraph:

> When Plaintiff was examined by Dr. Kenneth Jordan MD on February 05, 2013 and May 15, 2013, he informed Dr. Jordan that he was suffering from excruciating pain radiating from his upper vertebrae and was experiencing muscle spasms constantly.  Dr. Jordan failed to treat any of Mr. Bonga's symptoms, nor did he properly examine Mr. Bonga, or order the proper diagnostic testing of Mr. Bonga's vertebrae to determine a diagnosis.

(DE 37 ¶ 74.)  The Court has addressed Plaintiff's motion to amend and simultaneously-filed proposed first amended complaint (DEs 36, 37) by an order filed along with the instant report and recommendation.  Still, even if this paragraph were part of the original complaint, it is akin to Defendant Jordan's assumption about the claims against him – that he "did not do more for [Plaintiff's] medical condition (such as prescribe pain medication) as a result of his two examinations of Plaintiff."  (DE 56 at 14.)  Such an allegation complains, on its face, of a failure to "treat" or "properly examine" or "order the proper diagnostic

8

testing" *at the time of the February 5 and  May 15, 2013 office visits;* it does not

extend the duty to treat or examine or order such testing out into the future, *ad*

*infinitum.*  If Defendant Jordan failed to treat Plaintiff's symptoms, properly

examine him or order proper diagnostic testing, then it seems, as Defendant Jordan

points out, that Plaintiff "would have known of Dr. Jordan's alleged 'deliberate

indifference[]'" on May 15, 2013.  (DE 56 at 15.)

### 4.   The "continuing violation doctrine" does not preserve Plaintiff's claims against Defendant Jordan.

Plaintiff asserts that his claims against Defendant Jordan come under the

"continuing violation doctrine," as there have been "ongoing Eighth Amendment

violations perpetrated by Dr. Kenneth Jordan against Mr. Bonga."  (DE 63 at 6-7.)

"The continuing violation doctrine preserves claims that would otherwise be time-

barred if the plaintiff can show a continuous and ongoing violation of his rights."

*Baker v. Michigan Dep't of Corr.*, No. 1:13-CV-284, 2013 WL 2318900, at *5

(W.D. Mich. May 28, 2013) (citing *Phillips v. Cohen,* 3 F. App'x 212, 218 (6th

Cir.2001)).  Furthermore:

> The Sixth Circuit recognizes *two types* of continuing violations:
> "those alleging *serial violations* and those identified with a
> *longstanding and demonstrable policy of discrimination*." *Sharpe v.
> Cureton,* 319 F.3d 259, 288 (6th Cir.2003). The continuing violation
> doctrine is a *narrow exception* to the statute of limitations rule, and
> federal courts are hesitant to apply it outside the context of a Title VII
> employment discrimination case. *Id.* at 267. The doctrine is inherently
> designed to address systemic, policy-based discrimination or injury,
> and discrimination claims are particularly suited to the exception.

9

*Baker v. Michigan Dep't of Corr.*, No. 1:13-CV-284, 2013 WL 2318900, at *5

(W.D. Mich. May 28, 2013) (emphases added).  The Sixth Circuit "has adopted a

three-part inquiry for determining whether a continuing violation exists[:]

> First, the defendant's wrongful conduct must continue after the
> precipitating event that began the pattern (in this case, the approval of
> the EIS).  Second, injury to the plaintiff must continue to accrue after
> that event.  Finally, further injury to the plaintiffs must have been
> avoidable if the defendants had at any time ceased their wrongful
> conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999); *see*

*also Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635

(6th Cir. 2007).

Plaintiff contends that his cause of action "continued to accrue all the while

treatment or care was denied to Mr. Bonga *by Dr. Jordan*."  (DE 63 at 8 (emphasis

added).)  Plaintiff also takes the position that his claims "accrued every time he

was seen *by Medical staff*."  (DE 63 at 9 (emphasis added)).  Still, Plaintiff has not

alleged that *Defendant Jordan*'s conduct continued after the two dates of which he

complains - February 5, 2013 and May 15, 2013.  And, whatever Defendant Jordon

did or did not do on those two dates, it did not, as explained above, forever extend

his duty and liability to this patient.  In other words, Plaintiff's claims against

Defendant Jordan fail "at the first inquiry because [Defendant Jordan] committed

no wrongful conduct within the limitations period."  *Baker*, 2013 WL 2318900, at *6.

Furthermore, the Court notes Plaintiff's description in Step I of MRF-0540 of medical kites "complaining of severe back pain, and *continuous progression of severity*."  (DE 1 at 18 (emphasis added).)  However, "'[a] continuing violation is occasioned by continual unlawful *acts*, not continual ill *effects* from an original violation.'"  *Tolbert*, 172 F.3d at 940 (quoting *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1166 (4th Cir.1991) (emphases added)).  Therefore, the "continuing violation doctrine" does not apply to Plaintiff's claims against Defendant Jordan.[3]

### 5. *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008) does not help Plaintiff's cause.

To be sure, Plaintiff's complaint alleges that Defendants "continue to violate" his rights.  (DE 1 at 13 ¶ A1.)  In his response to the instant motion, Plaintiff asks the Court to apply *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), a case in which the plaintiff alleged that the defendants "conspired over time to deprive him of medical care, thereby inflicting punishment in

---

[3] In his reply, Defendant Jordan also points to the fact that he "never provided any services at [LCF] after June 13, 2013[,]" in support of which he provides an affidavit from an officer of Weatherby Locums's parent corporation.  (DE 64 at 3, DE 64-1 at 3 ¶ 5.)  However, "[i]n ruling on a motion for judgment on the pleadings, a court may not consider material outside of the pleadings."  *Littlejohn*, 2006 WL 2039981, at *2 (citing Fed.R.Civ.P. 12(c)).

violation of the Eighth Amendment on an ongoing basis." *Ellis*, 568 F.Supp.2d at 785. (*See* DE 63 at 6, 8, 9.) However, as the Sixth Circuit has explained, *Ellis* dealt with "an *ongoing* medical condition and the claim that the state stood by and did nothing in the face of that *ongoing* condition[,]" as opposed to "*repeated* instances of *discrete* acts of harm." *Siggers v. Campbell*, 652 F.3d 681, 692-693 (6th Cir. 2011) (emphases added) (describing the difference between *Ellis* and *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("Johnson's grievances were sufficient to exhaust claims that arose from the same continuing failure to protect him from sexual assault.")).

In the instant case, the allegations against LCF Defendant Jordan are based upon February 5, 2013 and May 15, 2013 "discrete acts of harm." *Siggers*, 652 F.3d at 693; *see also Mattox v. Edelman*, 851 F.3d 583, 587-588, 599 (6th Cir. 2017), *reh'g denied* (Apr. 6, 2017) (distinguishing regular exposure to toxic tobacco smoke from Mattox's continued intermittent chest pains); *Hoosier v. Wendy Liu*, No. 16-10688, 2017 WL 2437208, at *3 (E.D. Mich. June 6, 2017) ("Plaintiff in this case complained of discrete incidents (cancellation of extra pillow, extra blanket, ice detail, snack bag detail, chow after med lines, and some vitals checks on or about 01/16/15; and sending of an e-mail on or about 02/12/15) for which the time of the alleged violations and the time limits for filing the grievances were readily identifiable."). Moreover, Plaintiff does not appear to be

12

alleging that some type of systemic problem resulted in his claims *against LCF Defendant Jordan*.  *Hoosier*, 2017 WL 2437208 at *3 ("Unlike in *Ellis*, nothing in this record indicates that cancellation of such medical orders or sending of such e-mails were ongoing problems.").  Thus, *Ellis* is distinguishable from Plaintiff's discrete – and not ongoing - claims against Defendant Jordan.

### E.    Conclusion

If the Court agrees with this analysis and resulting conclusions, then it need not entertain Defendant Jordan's argument that Plaintiff did not exhaust his available administrative remedies as to the claims against him.  (*See* DE 56 at 15-18, DE 63 at 9-11, DE 64 at 3-4.)  For the reasons stated above, the Court should conclude that Plaintiff's claims against LCF Defendant Jordan all of which are based on the events of February 5, 2013 and May 15, 2013, are barred by the statute of limitations.  Accordingly, the Court should **GRANT** Defendant Jordan's July 19, 2017 motion to dismiss pursuant to Fed. R. Civ. P. 12(c) and dismiss Plaintiff's claims against him with prejudice.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 11, 2017          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

14

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 11, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti

15