UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LEE BONGA,

       Plaintiff,                           Case No. 2:16-cv-13685
                                                  District Judge Sean F. Cox
v.                                                   Magistrate Judge Anthony P. Patti

BADAWI ABDELLATIF,
M.D., et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS DOMINGUEZ-BEM, OUELLETTE, AND PLOEHN'S MOTION FOR SUMMARY JUDGMENT "BASED SOLELY ON THE FAILURE TO EXHAUST ADMINSITRATIVE REMEDIES" (DE 43)**

**I.    RECOMMENDATION**: The Court should **GRANT** Defendants Dominguez-Bem, Ouellette, and Ploehn's June 13, 2017 motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. (DE 43.)

**II.   REPORT**

       **A.    Plaintiff brings this lawsuit against six defendants.**

Plaintiff Jeffrey Lee Bonga (#271635) is currently incarcerated at the Michigan Department of Corrections (MDOC) St. Louis Correctional Facility (SLF). (DE 26 at 4.) On October 13, 2016, while incarcerated at the MDOC's Alger Correctional Facility (LMF) in Michigan's upper peninsula, Plaintiff filed the instant lawsuit, *pro se,* against six defendants: **(1-4)** Kenneth Jordan, Victor

1

Dominguez-Bem, M.D., Kyle Ploehn, P.A., and Margaret Ouellette, P.A., each of Lakeland Correctional Facility (LCF); **(5)** Badawi Abdellatif, M.D., of Macomb Correctional Facility (MRF); and, **(6)** William C. Borgerding, whose location is not provided.  (DE 1 ¶¶ 8-13; *see also* DE 11, DE 17.)

The facts underlying Plaintiff's complaint begin with the alleged events of 2009 – continue through his March 2015 transfer from LCF to MRF, through his May 2016 transfer to Muskegon Correctional Facility (MCF), and through his July 2016 transfer to LMF – and conclude in September 2016.  (DE 1 ¶¶ 20-38.)  Plaintiff sues Defendants in their individual and official capacities, alleging "denial of medical care."  (DE 1 ¶¶ 14-19, 39-46.)  He seeks declaratory, injunctive, compensatory and punitive relief.  (DE 1 at 13.)

### B. Pending matters

Judge Cox has referred this case to me for all pretrial proceedings.  (DE 9.) Currently before the Court are several motions:

- the remainder of Plaintiff's October 13, 2016 motion for preliminary injunction **(DE 3)** following the Court's July 21, 2017 order adopting and accepting my May 10, 2017 report & recommendation in part and returning the matter to me in part, based upon Defendant Borgerding's interim June 28, 2017 appearance (DE 33, DE 51, DE 59)

- Plaintiff's motion to amend complaint **(DE 36)**, along with the simultaneously-filed proposed first amended complaint (DE 37)

- Defendants Dominguez-Bem, Ouellette, and Ploehn's motion for summary judgment "based solely on the failure to exhaust

2

> administrative remedies" **(DE 43)**, regarding which a response, a reply, and a sur-reply have been filed (DEs 50, 54, 62)[1]

- Defendant Borgerding's motion for summary judgment **(DE 52)**, which has been fully briefed (DEs 53, 60, 61)

- Defendant Jordan's motion to dismiss and/or for summary judgment **(DE 56)**, which has been fully briefed (DEs 57, 58, 63, 64)

The remainder of Plaintiff's motion for preliminary injunction (DE 3), Plaintiff's motion to amend (DE 36), and Defendant Borgerding's motion for summary judgment (DE 42) are being addressed under separate cover. This report addresses Dominguez-Bem, Ouellette, and Ploehn's motion for summary judgment based on the failure to exhaust administrative remedies (DE 43).

### C. Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

---

[1] By an order entered simultaneously with this report and recommendation, Plaintiff's sur-reply has been stricken.

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words,

summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D. Analysis

#### 1. Plaintiff's allegations against Defendants span a period of time when Plaintiff was incarcerated at multiple MDOC facilities.

According to Plaintiff, he underwent a "cervical 5 through 7 anterior fusion" on April 24, 2012. (DE 1 ¶ 24.) Plaintiff's claims against Defendants Jordan, Ploehn, Ouellette and Dominguez-Bem appear to relate to intermittent treatment for Plaintiff's back pain at LCF between February 2013 and February 2015. (DE 1 ¶ 26.) Plaintiff's claims against Defendant Abdellatif appear to relate to the events between March and August 2015 at MRF. (DE 1 ¶¶ 28-29.) Finally, Plaintiff's claims against Defendant Borgerding appear to relate to the events of September 2016 while Plaintiff was incarcerated at LMF. (DE 1 ¶ 38).

#### 2. Plaintiff's alleges Eighth Amendment deliberate indifference to serious medical needs as to Defendants Dominguez-Bem, Ouellette, and Ploehn.

Plaintiff describes Dominguez-Bem, Ouellette and Ploehn as employees of Corizon Health, Inc. ("Corizon") who are located at LCF. (DE 1 ¶¶ 11-13.) According to Plaintiff, he was seen by "PA Margaret [O]uellette on February 25,

5

2015; PA [K]yle W. Ploen on August 28, 2013; . . . [and] Dr. Victor Dominguez-Bem on March 04, 2014." (DE 1 ¶ 26.) He alleges the same breach of duty against each of these Defendants: "[t]he failure . . . to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution." (DE 1 ¶¶ 52-54.) Plaintiff sues these Defendants in their individual and official capacities and seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*See* DE 1 ¶¶ 17-19, DE 1 at 13.) [2]

### 3. Plaintiff has filed multiple grievances and related appeals, of which only MRF-15-03-0540-12d appears to have been filed during the time-period relevant to these Defendants.

The Court must first consider the threshold issue of whether Plaintiff has exhausted his available administrative remedies as to any of his claims against Defendants Dominguez-Bem, Ouellette, and Ploehn. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court has instructed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly

---

[2] These allegations are similar to those set forth in Plaintiff's proposed first amended complaint. (DE 37 ¶¶ 15-17, 34, 88-90, 23-25; DE 37 at 20-21.)

structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

The MDOC's Policy Directive regarding Prisoner/Parolee Grievances describes a grievance process that includes an attempt at resolution, followed by three written steps. MDOC PD 03.02.130 ¶¶ P-GG (effective July 9, 2007). Among other things, when filing a written grievance, "[i]nformation provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how)[,]" and "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* ¶ R.

Defendants Dominguez-Bem, Ouellette and Ploehn argue that Plaintiff "failed to comply with MDOC grievance procedure as he failed to name all of the individuals involved in his claim[,]" and, thus, he "failed to exhaust his administrative remedies with respect to his claims against" them. (DE 43 at 13-15.) By way of background, it appears that Plaintiff has appealed six MDOC Grievances through Step III:

- MCF-09-05-0401-29z , received at Step I on April 28, 2009 and had a Step III response mailed on October 15, 2009.

- LCF-11-07-0716-12d3, received at Step I on July 15, 2011 and had a Step III response mailed on November 14, 2011.

- LCF-12-02-0218-12f3, contending that, on February 14, 2012, Dr. Sohail "refused to properly treat [his] upper and lower back pain." (DE 43-1 at 30-31)

7

- *MRF-15-03-0540-12d, mentioning Ouellette and Dr. Abdellatif (DE 43-1 at 22, 26-27)*

- LMF-16-10-2710-02A, claiming that Case Manager Hubble informed him that he "was barred from going to [his] law clerk assignment pursuant to the Warden." (DE 43-1 at 15)

- LMF-16-09-2601-12F1, claiming to have spoken to PA Westcomb and contending he was "still being denied proper pain medication." (DE 43-1 at 6, 8-9)

(DE 43-1, DE 56-1.)

Within his complaint, Plaintiff alleges that he has "exhausted his administrative remedies with respect to all claims and all defendants, except defendant William Borgerding DO." (DE 1 ¶ 47.) In making this statement, Plaintiff appears to rely upon MRF-15-03-0540-12d and LMF-16-09-2601-12Fl. (DE 1 at 15.) However, the "date of incident" on LMF-2601 is September 20, 2016, at which time Plaintiff claims to have been incarcerated at *LMF*; in other words, it seems unlikely *LMF*-2601 was filed to grieve Defendants located at *LCF*, the facility with which Plaintiff associates Dominguez-Bem, Ouellette, and Ploehn. (DE 1 at 9 ¶¶ 11-13, 38; DE 1 at 28-30; DE 43-1 at 6, 8-9.)[3] In addition, given the August 2013, March 2014 and February 2015 timing of the factual allegations against LCF Defendants Ploehn, Dominguez-Bem, and Ouellette, respectively, it seems that the only one of the aforementioned grievances that could be relevant to

---

[3] Moreover, for the reasons discussed in my report and recommendation regarding Dr. Borgerding's motion for summary judgment (DE 52), LMF-2601 was not exhausted prior to the October 13, 2016 initiation of this case.

8

Plaintiff's claims against these Defendants is the one initiated in March 2015, namely, MRF-15-03-0540-12d. In other words, the aforementioned LCF grievances were initiated during 2011 and 2012 and, as such, would not appear to relate to the complained of visits with these Defendants at LCF.[4]

    **4.    MRF-15-03-0540-12d does not exhaust Plaintiff's available administrative remedies as to his claims against Dominguez-Bem, Ouellette, and Ploehn within his complaint.**

        **a.    MRF-15-03-0540-12d clearly grieves Defendant Abdellatif.**

It is clear that Plaintiff filed MRF-0540 against Dr. Abdellatif, as his name is mentioned at several places within the grievance papers. (DE 43-1 at 19-27.) Moreover, this grievance appears to relate to Plaintiff's claims against Abdellatif, as: **(a)** he is the only Defendant identified as being located at MRF, where Plaintiff was allegedly incarcerated from March 10, 2015 to May 5, 2016; **(b)** the grievance was initiated during that time; and **(c)** the "date of incident" on the Step I grievance form and the date the form was prepared are March 16, 2015 and March 17, 2015, each of which corresponds to the dates of Plaintiff's express factual allegations

---

[4] To be sure, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Plaintiff does respond that "not every administrative complaint filed by [him] was appealed through [the] prison's administrative system . . . ." (DE 50 at 2.) However, he does not appear to be arguing that there was a grievance other than one listed above (albeit one not appealed to Step III) which operated to exhaust his claim against LCF Defendants Dominguez-Bem, Ouellette, and Ploehn.

9

relating to this particular Defendant.  (DE 1 ¶¶ 8, 27-31; *see also* DE 1 ¶¶ 40-42, 49; DE 43-1 at 1, 19-27.)  Correctly, as explained more fully below, Defendants state that this grievance "only raises allegations against Dr. Abdellatif[.]"  (DE 54 at 4.)

### b. MRF-15-03-0540-12d does not grieve LCF Defendants Dominguez-Bem, Ouellette, or Ploehn.

What is less clear is whether this grievance suffices to exhaust Plaintiff's available administrative remedies as to Defendants Dominguez-Bem, Ouellette, and Ploehn.  The Court should conclude it does not.

#### i. MRF-15-03-0540-12d does not concern these LCF Defendants.

The crux of these Defendants' exhaustion argument is that Plaintiff "failed to name" any of them in his grievances, in violation of MDOC PD 03.02.130 ¶ R, and they more specifically argue that MRF-0540 "does not concern" them.  (DE 43 at 10, 13, 14, 15; DE 54 at 4.)  This appears to be true.

First, I question whether a grievance initiated at MRF relates to Defendants who Plaintiff associates with LCF.  (*See* DE 1 at ¶¶ 11-13.)  In the same vein, given the August 2013, March 2014 and February 25, 2015 timing of Plaintiff's factual allegations against these LCF Defendants, a grievance based upon a March 16, 2015 "date of incident" would not appear to relate to Plaintiff's claims against these Defendants.  (DE 1 ¶ 26, DE 43-1 at 22.)

Second, MRF-0540 does not grieve LCF Defendants Dominguez-Bem, Ouellette, or Ploehn in accordance with MDOC PD 03.02.130 ¶ R. This grievance does not expressly mention either Dominguez-Bem or Ploehn. To be sure, Plaintiff does mention Ouellette within the March 2015 MRF-540 "continuation of Step I grievance," as follows:

> Mr. Bonga was seen by health provider short[l]y prior to him being transferred to Macomb Correctional Facility [MRF]. PA Ou[e]l[l]ette informed Mr. Bonga that she would place him out on call-out a week after she seen him, to re-submit his Pain Management Committee paperwork to prescribe him pain medication that will help with his back pain. Mr. Bonga was transferred a few days later without seeing anyone else.

(*See* DE 1 at 17-19, DE 43-1 at 22, 26-27.) However, this portion of Plaintiff's grievance does not complain about his February 25, 2015 visit with Ouellette – presumably at LCF - for his back pain; instead, it appears to provide background for Plaintiff's grievance against Defendant Abdellatif of Macomb Correctional Facility (MRF) based upon a "date of incident" of March 16, 2015. (DE 1 ¶¶ 8, 13, 26-30.) *See*, *e.g.*, *Hubbard v. Prison Health Servs., Inc.*, No. 10-14390, 2012 WL 1079849, at *5-*6 (E.D. Mich. Mar. 30, 2012) (Zatkoff, J., adopting in part and rejecting in part report and recommendation of Randon, M.J.) ("Plaintiff's grievances and Complaint appear to refer to different events, and his grievances fail to set forth 'dates, times, places and names of all those involved in the issue being grieved,' as is required by ¶ R of the Policy Directive.").

11

> ii. **Even though MRF-15-03-0540-12d was decided "on the merits," it does not exhaust Plaintiff's claims as to *any* member of the MDOC's medical or health care staff.**

In his complaint, Plaintiff claims to have been seen for his back pain on specific dates by specific members of the "medical staff." (DE 1 ¶ 26.) He also makes a general allegation about "medical staff at [MCF] . . . [,]" and further alleges that he "has informed every medical staff he has encountered, that the medication he receives is severely inadequate for his pain levels." (DE 1 ¶¶ 33, 44.) In addition, his Step III appeal in MRF-15-03-0540-12d responds to Nurse Kinder's Step II response, in part by stating: "Any competent health care staff would recognize the seriousness of Mr. Bonga's Spinal Cord Injuries, and by 'supported medical research' would determine that Mr. Bonga needs serious medical treatment that he is be[ing] denied." (DE 1 at 23, 25.)

Plaintiff argues that "at least seven of his appeals discussed his symptoms, his inability to receive effective medication, and defendant *medical staff*'s refusal to involve [a] specialist[.]" (DE 50 at 2 (emphasis added).) Admitting that he "failed to meet [the] requirement of [the] grievance procedure by naming each person involved," Plaintiff notes that the MDOC "opted to dismiss [the] grievance on [the] merits rather than invoke its procedural bar[.]" (DE 50 at 4; *see also* DE 50 at 5.) However, any argument by Plaintiff that the MDOC's failure to reject

MRF-15-03-0540-12d for the "procedural defect" of failing to comply with MDOC PD 03.02.130 ¶ R's requirement to name names is unavailing.

First, Plaintiff's reliance on *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford,* 548 U.S. at 94-95) is misplaced. In *Reed-Bey*, Plaintiff had "fail[ed] to name a single individual in his initial grievance[.]" *Reed-Bey*, 603 F.3d at 324. Nonetheless, MDOC officials "chose to address Reed-Bey's grievance on the merits." *Id*. As such, the Sixth Circuit stated: "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id*. at 325. By comparison, as outlined above, MRF-15-03-0540-12d clearly grieves Defendant Abdellatif.

To be sure, Plaintiff has cited two district court cases that would seem to favor his argument. *See Velez v. Michigan Dep't of Corr.*, No. 09-10519, 2010 WL 1254857, at *6-*7 (E.D. Mich. Jan. 25, 2010) (Hluchaniuk, M.J., *report and recommendation adopted*, No. 09-10519, 2010 WL 1254852 (E.D. Mich. Mar. 28, 2010) (Hood, J.) (where Plaintiff's grievance "expressed his complaints about the ongoing treatment of his surgical hernia over the course of 10 months[,]" and "named 'SRF Health service officials,' 'Dr. Burtch,' 'health services,' and 'CMS[,]'" the Court noted that it "was not rejected as unduly vague or for a failure to identify specific individual dental and medical personnel and the respondent

13

addressed the grievance on the merits."); *Grear v. Gelabert*, No. 1:07-CV-203, 2008 WL 474098, at *7-*8 (W.D. Mich. Feb. 15, 2008) (Jonker, J., *approving and adopting in part report and recommendation of* Brenneman, M.J. ) (where the grievance named only "health care staff," Plaintiff "properly exhausted his claims based on health care staff's failure to provide the medically necessary athletic shoes[,]" and "[t]he claim is exhausted as to all health care staff, which includes all of the Defendants named in the instant case.").

Still, "[t]he point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey*, 603 F.3d at 324 (citing *Woodford,* 548 U.S. at 94-95). Plaintiff contends that he has provided all of the Defendants with a "fair opportunity" to "address his grievances on the merits, . . . correct prison errors, and . . . create administrative record for these disputes for this Honorable Court." (DE 50 at 4.) The Court should disagree. MRF-15-03-0540-12d may provide "fair opportunity" or notice to Defendant Abdellatiff (seemingly the only MRF Defendant named in this case) or perhaps even to MRF health care staff that treated Plaintiff upon his alleged March 2015 transfer to MRF (*see* DE 1 ¶¶ 8, 27). However, it cannot be said that this grievance - initiated in *March 2015* at *MRF* and seeming to grieve (of the Defendants in this case) only Abdellatif -

14

provides the same opportunity or notice to the MDOC as to Plaintiff's claims against Defendants Ploehn, Dominguez-Bem, and Ouellette, all of whom Plaintiff attributes to *LCF* and regarding whom the factual allegations occurred on *August 28, 2013, March 4, 2014, or February 25, 2015*.  His grievance relating to care received at a particular period of time in one particular MDOC facility does not exhaust his remedies as to all MDOC provided medical care for all times and in all places.

### iii. The alleged circumstances do not constitute "an ongoing medical concern" or "a continuing violation" as to these particular defendants.

As noted above, the factual allegations underlying Plaintiff's complaint span the period from March 27, 2009 through an April 24, 2012 surgery and into September 2016.  (DE 1 ¶¶ 20-38.)  Moreover, Plaintiff claims to have undergone a "surgery on his lower back in 2017."  (DE 50 at 3.)  In Plaintiff's terms, he "has put on notice all the defendants named in this case with his grievances that stated the ongoing Eighth Amendment violation . . . ."  (*Id.*; *see also* DE 50 at 5.)

In particular, Plaintiff relies upon *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008) (Lawson, J., *adopting report and recommendation of* Binder, M.J.), wherein Plaintiff contended that "the defendants ha[d] failed to treat the chronic pain that results from several diagnosed conditions," and further alleged conspiracy.  *Ellis*, 568 F. Supp. 2d at 779.  Ultimately, the Court concluded that

15

"plaintiff filed a timely grievance against all the defendants alleging an ongoing conspiracy to deprive him of medical treatment that addressed his complaints of intractable pain, he pursued his grievance through all the required steps, and therefore he exhausted his administrative remedies." *Id*. Stated otherwise, the Court found that Ellis "ha[d] properly exhausted his claim alleging a continuous— or 'ongoing'—Eighth Amendment violation." *Ellis*, 568 F.Supp.2d at 785.

I recognize that Plaintiff's complaint alleges that Defendants "continue to violate" his rights. (DE 1 at 13 ¶ A1.) Furthermore, I note MRF-0540's description of medical kites "complaining of severe back pain, and continuous progression of severity." (DE 1 at 18.) However, as this Court has counseled, *Ellis* "addresses the timeliness of a grievance raising an ongoing medical condition, not the requirement to name defendants." *Vartinelli v. Cady*, No. 07-12388, 2009 WL 706083, at *3 (E.D. Mich. Mar. 13, 2009) (Battani, J., *adopting report and recommendation of* Pepe, M.J.); *see also Hoosier v. Wendy Liu*, No. 16-10688, 2017 WL 2437208, at *3 (E.D. Mich. June 6, 2017) (Hood, J.). Moreover, as the Sixth Circuit has explained, *Ellis* dealt with "an *ongoing* medical condition and the claim that the state stood by and did nothing in the face of that *ongoing* condition[,]" as opposed to "*repeated* instances of *discrete* acts of harm." *Siggers v. Campbell*, 652 F.3d 681, 692-693 (6th Cir. 2011) (emphases added) (describing the difference between *Ellis* and *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir.

16

2004) ("Johnson's grievances were sufficient to exhaust claims that arose from the same continuing failure to protect him from sexual assault.")). Moreover, while Plaintiff responds that he "has put on notice all the defendants named in this case with his grievances that stated the ongoing Eighth Amendment violation in his grievances . . . [,]" it is not clear how LCF Defendants Dominguez-Bem, Ouellette, and/or Ploehn were so notified. (DE 50 at 3.) Nor has the Court located a conspiracy allegation in his complaint.

In the instant case, the allegations against LCF Defendants Dominquez-Bem, Ouellette, and Ploehn are based on discrete dates – March 4, 2014, February 25, 2015, and August 28, 2013, respectively. (DE 1 ¶ 26.) *See also Mattox v. Edelman*, 851 F.3d 583, 587-588, 599 (6th Cir. 2017), *reh'g denied* (Apr. 6, 2017) (distinguishing regular exposure to toxic tobacco smoke from Mattox's continued intermittent chest pains); *Hoosier*, 2017 WL 2437208, at *3 ("Plaintiff in this case complained of discrete incidents (cancellation of extra pillow, extra blanket, ice detail, snack bag detail, chow after med lines, and some vitals checks on or about 01/16/15; and sending of an e-mail on or about 02/12/15) for which the time of the alleged violations and the time limits for filing the grievances were readily identifiable."). Nor does Plaintiff appear to be alleging that some type of systemic problem resulted in his claims *against LCF Defendants Dominquez-Bem, Ouellette, and Ploehn. Hoosier*, 2017 WL 2437208 at *3 ("Unlike in *Ellis*, nothing

17

in this record indicates that cancellation of such medical orders or sending of such e-mails were ongoing problems.").

### E. Conclusion

For the reasons stated above, the Court should conclude that Plaintiff's claims against LCF Defendants Dominguez-Bem, Ouellette, and Ploehn based on the events of August 2013, March 2014 and February 2015 were not unexhausted at the time Plaintiff "brought" his "action" against these Defendants. Accordingly, the Court should **GRANT** Defendants' June 13, 2017 motion for summary judgment based solely on the failure to exhaust administrative remedies (DE 43) and dismiss Plaintiff's claims against these Defendants.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: December 11, 2017          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 11, 2017, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti

19