UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LEE BONGA,

       Plaintiff,

v.

BADAWI ABDELLATIF,
M.D., et al.,

       Defendants.

_____/

Case No. 2:16-cv-13685
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT BORGERDING'S MOTION FOR SUMMARY JUDGMENT (DE 52) AND DENY THE REMAINING PORTION OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 3)**

**I.   RECOMMENDATION**: The Court should **DENY** the remaining portion of Plaintiff's October 13, 2016 motion for preliminary injunction (DE 3) and **GRANT** Defendant Borgerding's motion for summary judgment (DE 52).

**II.   REPORT**

    **A.   Plaintiff brings this lawsuit against six defendants.**

Plaintiff Jeffrey Lee Bonga (#271635) is currently incarcerated at the Michigan Department of Corrections (MDOC) Thumb Correctional Facility (TCF). (DE 68.) On October 13, 2016, while incarcerated at the MDOC's Alger Correctional Facility (LMF) in Michigan's upper peninsula, Plaintiff filed the

1

instant lawsuit, *pro se,* against six defendants:  **(1-4)** Kenneth Jordan, Victor Dominguez-Bem, M.D., Kyle Ploehn, P.A., and Margaret Ouellette, P.A., each of Lakeland Correctional Facility (LCF); **(5)** Badawi Abdellatif, M.D., of Macomb Correctional Facility (MRF) and **(6)** William C. Borgerding, whose location is not provided.  (DE 1 ¶¶ 8-13; *see also* DE 11, DE 17.)

The facts underlying Plaintiff's complaint begin with the alleged events of 2009 – continue through his March 2015 transfer from LCF to MRF, through his May 2016 transfer to Muskegon Correctional Facility (MCF), and through his July 2016 transfer to LMF – and conclude during September 2016.  (DE 1 ¶¶ 20-38.) Plaintiff sues Defendants in their individual and official capacities, alleging "denial of medical care."  (DE 1 ¶¶ 14-19, 39-46.)  He seeks declaratory, injunctive, compensatory and punitive relief.  (DE 1 at 13.)

### B.     Pending matters

Judge Cox has referred this case to me for all pretrial proceedings.  (DE 9.) Currently before the Court are several motions:

- the remainder of Plaintiff's October 13, 2016 motion for preliminary injunction (DE 3) following the Court's order adopting and accepting my report & recommendation in part and returning the matter to me in part (DE 33, DE 59)

- Plaintiff's motion to amend complaint (DE 36), along with the simultaneously-filed proposed first amended complaint (DE 37)

- Defendants Dominguez-Bem, Ouellette, and Ploehn's motion for summary judgment based solely on the failure to exhaust

      administrative remedies (DE 43), regarding which a response and a reply have been filed (DEs 50, 54, 62)

- Defendant Borgerding's motion for summary judgment (DE 52), which has been fully briefed (DEs 53, 60, 61)

- Defendant Jordan's motion to dismiss and/or for summary judgment (DE 56), which has been fully briefed (DEs 57, 58, 63, 64)

Plaintiff's motion to amend (DE 36) has been addressed by a concurrently-entered, separate order. This report addresses the motions for preliminary injunction and summary judgment.

### C. Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

**D.     Analysis**

    **1.     The timeframe and MDOC facilities involved**

According to Plaintiff, he underwent a "cervical 5 through 7 anterior fusion" on April 24, 2012.  (DE 1 ¶ 24.)   Plaintiff's claims against Defendants Jordan, Ploehn, Ouellette and Dominguez-Bem appear to relate to treatment for Plaintiff's back pain at LCF between February 2013 and February 2015.  (DE 1 ¶ 26.)  Plaintiff's claims against Defendant Abdellatif appear to relate to the events between March and August 2015 at MRF.  (DE 1 ¶¶ 28-29.)  Finally, Plaintiff's claims against Defendant Borgerding appear to relate to the events of September 2016, while Plaintiff was incarcerated at LMF.  (DE 1 ¶ 38).

    **2.     The nature of the claim(s) against Defendant Borgerding**

According to Plaintiff, Dr. Borgerding is a member of the MDOC's Pain Management Committee (PMC), which is "a three-member body and part of the MDOC."  *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 685 (6th Cir. 2013).  (DE 24 at 3.)  Based upon his counsel's appearance, it is apparent that Defendant Borgerding is an employee of the MDOC.  (DE 51.)

Plaintiff makes the following, specific allegations with respect to Defendant Borgerding, which concern pain medication and a neurosurgeon consult:

5

- On September 20, 2016, Mr. Bonga was seen by PA Westcomb in the health clinic located in his unit in Alger Correctional Facility. PA Westcomb informed Mr. Bonga that the Pain Management Committee and Dr. William C. Borgerding[,] DO, denied her request for him to have *the medication Neurotins, and Pamelor*, and *the neurosurgeon consult*. Dr. Borgerding did approve an MRI of Mr. Bonga's lumbar region only. PA Westcomb informed Mr. Bonga that she would resubmit the surgeon consult and medication request after the MRI.

- Defendant Dr. William C. Borgerding's function is to make uniform the practices of prescribing pain medication in the Michigan prisons. While he seeks to impose uniformity, he also seeks to have adequate pain medication prescribed for the medical condition in question.

- Dr. Borgerding has failed to prescribe *the proper pain medication* for Mr. Bonga. Mr. Bonga has informed every medical staff he has encountered, that the medication he receives is severely inadequate for his pain levels. Mr. Bonga is unable to even walk the prescribed 20-40 minutes a day due to the extreme pain it creates. Dr. Borgerding has never personally examined Mr. Bonga. Dr. Borgerding has only reviewed Mr. Bonga's medical file to determine whether to approve or disapprove medical treatment.

(DE 1 ¶¶ 38, 43, 44 (emphases added).) Plaintiff alleges that Defendant Borgerding's failure to "approv[e] the medications PA Westcomb requested (Neurotins, and Pamelor), and neurosurgeon consult" constitutes deliberate indifference to a serious medical need, as prohibited by the Eighth Amendment. (DE 1 ¶ 50). Plaintiff sues Borgerding in his individual and official capacities and seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*See* DE 1 ¶ 15, DE 1 at 13.)

### 3. Plaintiff has filed multiple grievances and related appeals.

The Court must first consider the threshold issue of whether Plaintiff has exhausted his available administrative remedies as to any of his claims against Borgerding. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court has instructed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

The MDOC's Policy Directive regarding Prisoner/Parolee Grievances describes a grievance process that includes an attempt at resolution, followed by three written steps. MDOC PD 03.02.130 ¶¶ P-GG (effective July 9, 2007). Among other things, when filing a written grievance, "[i]nformation provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how)[,]" and "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* ¶ R.

Dr. Borgerding argues that Plaintiff "failed to exhaust administrative remedies on his claims." (DE 52 at 9-15.) By way of background, it appears that Plaintiff has appealed six MDOC Grievances through Step III:

- MCF-09-05-0401-29z

- LCF-11-07-0716-12d3

- LCF-12-02-0218-12f3, contending that, on February 14, 2012, Dr. Sohail "refused to properly treat [his] upper and lower back pain." (DE 43-1 at 30-31)

- MRF-15-03-0540-12d, mentioning Ouellette and Dr. Abdellatif (DE 43-1 at 22, 26-27)

- LMF-16-10-2710-02A, claiming that Case Manager Hubble informed him that Plaintiff "was barred from going" to his assignment as a law clerk "pursuant to the Warden." (DE 43-1 at 15)

- LMF-16-09-2601-12F1, claiming to have spoken to PA Westcomb and contending he was "still being denied proper pain medication." (DE 43-1 at 6, 8-9)

(DE 43-1, DE 56-1.) Based on Plaintiff's Step III grievance report, LMF-2710 and LMF-2601 *were not* yet exhausted at the time this lawsuit was initiated. (DE 43-1 at 1-2, DE 56-1 at 2-3.)

### 4. LMF-16-09-2601-12F1 does not exhaust Plaintiff's available administrative remedies as to his claims against Dr. Borgerding within the October 13, 2016 complaint.

Dr. Borgerding admits that LMF-2601 named him at Step I, but he also notes that the related Step III response was not dated until December 2016, a date *after* the filing of Plaintiff's October 13, 2016 complaint. (DE 52 at 8.) This is

8

problematic, because "[t]he plain language of the statute makes exhaustion a *precondition* to filing an action in federal court . . . ." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (external citations omitted) (emphasis added).

Moreover, Plaintiff's premature filing of his complaint cannot be explained by a delay in the MDOC's initial processing of LMF-2601. To the contrary, LMF-2601 was dated September 20, 2016, received at Step I on September 23, 2016, and responded to on October 3, 2016. (*See* DE 43-1 at 1, 6-7; DE 56-1 at 2, 7-8, DE 52 at 14.) Thus, the Step I response occurred "within 15 business days after receipt of the grievance . . . ." MDOC PD 03.02.130 ¶ X. More to the point, Plaintiff's complaint is hand-dated September 25, 2016, and his proof of service letter is dated October 4, 2016. (*See* DE 1 at 14, 32.) Thus, it seems his complaint was prepared two days after LMF-2601 was received at Step I and then placed into the mail the day after the date of his Step I response. By the time Plaintiff's complaint was docketed with this Court on October 13, 2016, Plaintiff had just completed his Step II grievance appeal, which was received at Step II on October 15, 2016. (DE 43-1 at 4, DE 56-1 at 5.)

Plaintiff's complaint and response do not help his cause. First, Plaintiff's complaint makes the following admissions:

- The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants, *except defendant William Borgerding DO*.

9

- At the time of this filing, Mr. Bonga is *in the process of exhausting* his remedies with respect to defendant Borgerding. He is currently in Step 1 of the grievance process.

(DE 1 ¶¶ 47, 48 (emphases added).) As to these admissions, the Court assumes Plaintiff is referring to LMF-16-09-2601-12F1. (*See* DE 1 at 15, 27-31). Thus, Plaintiff admits he initiated his lawsuit against Defendant Borgerding prior to exhausting his available administrative remedies as to the claims against him.

To be sure, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Still, "[t]here is . . . no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust." *Jones*, 549 U.S. at 214. In other words, even though failure to exhaust is an affirmative defense, the Court is not prevented from screening a complaint under 28 U.S.C. § 1915A, which permits dismissal of a complaint, or any portion thereof, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). Albeit in an unpublished case, this Court has stated: "a plaintiff's complaint can be dismissed *sua sponte* if the complaint on its face fails to state a claim upon which relief can be granted." *Spaulding v. Oakland Cty. Jail Med. Staff*, No. CIV. 4:07-CV-12727, 2007 WL 2336216, at *1 (E.D. Mich. Aug. 15, 2007) (citing *Jones*). Such is the case here.

10

Second, Plaintiff's argument that LMF-2601 was exhausted *before* the complaint was *served* upon Borgerding is unavailing. (DE 60 at 6, 9.) Plaintiff's complaint was filed on October 13, 2016 but, apparently, not served upon Borgerding until May 2017. (DE 28, 31, 34, 51.) Thus, LMF-2601 – which had a Step III response dated December 31, 2016 – "was completed . . . almost five months before Dr. Borgerding was even served [with] Mr. Bonga's §1983 complaint." (DE 60 at 6.) As such, Plaintiff contends that "[t]he MDOC was given 'fair opportunity' to address the merits of Bonga's grievances against Dr. Borgerding prior to Dr. Borgerding being served Bonga's § 1983 complaint against Dr. Borgerding[,]" as contemplated in *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir 2010), and that the benefits of proper exhaustion and the intent of the PLRA as discussed in *Woodford*, 548 U.S. at 93-95, were achieved. (DE 60 at 4, 7, 9.)

However, Section 1997e(a) requires exhaustion before the action is "brought." In this vein, each party cites *Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017), *reh'g denied* (Apr. 6, 2017), with Defendant Borgerding arguing that Plaintiff cannot rely on *Mattox*. (DE 52 at 14-15, DE 61 at 2-3.) In *Mattox*, the Sixth Circuit observed that its sister circuits "have unanimously concluded that Rule 15 permits a prisoner to amend his complaint to add *new claims* that have only been exhausted after the commencement of the lawsuit." *Mattox*, 851 F.3d at

11

592 (emphasis added). After acknowledging *Reed-Bey*'s instruction regarding "a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced[,]" the Sixth Circuit stated:

> If a prisoner exhausts some of his claims after a proper federal lawsuit has been filed as to *other claims*, and then moves to amend his complaint to add the *newly exhausted claims*, the policy behind the PLRA's exhaustion requirement is still met because prison officials will have had a fair opportunity to address the *new claims* on the merits.

*Id.* (emphasis added). Nonetheless, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to *add claims* that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox*, 851 F.3d at 595 (emphasis added).

Plaintiff cites *Mattox* in his favor, asking the Court to rely on the following passage from *Mattox*:

> But [the plaintiff's] 1998 grievance concerning the alleged attack at [the prison] gave prison officials precisely the type of opportunity to address his complaints that the PLRA contemplates. The sole *593 objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins. *See Ford*, 362 F.3d at 399. [The plaintiff's] November 1998 grievance apprised prison officials of the alleged attack at [the prison], and he did not hale those defendants into court until he had pursued all of the administrative remedies available to him. *That he raised these claims by amending his complaint in an already pending case rather than initiating an entirely new proceeding is irrelevant to the objectives of § 1997e(a).*

*Mattox*, 851 F.3d at 592-593 (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)) (emphasis in original). (DE 60 at 7-8.) However, given the procedural posture of this case, and comparing the original and proposed first amended complaints, Plaintiff is not seeking to amend his complaint to *add claims* against Defendant Borgerding. (*Compare* DE 1 ¶¶ 9, 15, 38, 43, 44, 50, DE 1 at 13 *with* DE 37 ¶¶ 13, 21, 47, 72, 73, 86, DE 37 at 20-21.) Instead, while there may be some differences in the verbiage of these paragraphs, Plaintiff is seeking to *sustain existing claims* against Borgerding in an *already pending case* on the basis that these claims were exhausted in between the time the complaint was "brought" or filed[1] against Defendant Borgerding and the time he was served with the complaint. This flies afoul of the Sixth Circuit's direction in *Freeman.* It would also have the practical effect of permitting Plaintiffs to prematurely file their complaints on the chance that their claims will be exhausted before service takes place. And, with regard to any argument that Borgerding was not "haled" into Court until he *received* a copy of the complaint (*see* DE 60 at 8), the time between filing and service of a complaint varies from case to case and within each case, depending on the number of Defendants to be served. The Undersigned doubts that Congress intended "brought" to have varying definitions.

---

[1] *See Cox v. Mayer*, 332 F.3d 422, 425 n.1 (6th Cir. 2003) (referencing *Harris v. Garner,* 216 F.3d 970, 973-80 (11th Cir. 2000) (en banc) for an explanation of "why 'to bring' means 'to file[.]'")

13

Nor does the debate over bringing an "action" versus a "claim" change my recommendation. To begin, "the word 'action' in § 1997e(a) is synonymous with the word 'claim[.]'" *Mattox*, 851 F.3d at 595. As Plaintiff points out, "in order to amend a complaint to allege newly exhausted claims, at least one claim in the original complaint must have been fully exhausted prior to the plaintiff's filing suit." *Thompson v. Robertson*, No. 3:15-CV-1527, 2017 WL 1048018, at *5 (M.D. Tenn. Mar. 20, 2017). (*See* DE 60 at 8.) Borrowing from Corizon Defendants Dominquez-Bem, Ouellette, and Ploehn's motion for summary judgment based solely on the failure to exhaust administrative remedies (*see* DE 43 at 13-15), Defendant Borgerding replies that Plaintiff's original complaint "did not contain *any exhausted* claims[,]" an assertion that Plaintiff disputes. (DE 52 at 15, DE 60 at 10, DE 61 at 2-3 (emphasis in original)).[2]

Whatever the status may be of Plaintiff's claims against these three Corizon Defendants, Defendant Borgerding is correct that "Bonga's original complaint did not contain any *exhausted claims against Dr. Borgerding* . . .[,]" (DE 61 at 3

---

[2] The Court questions Defendant Borgerding's assertion, as Grievance Identifiers MCF-0401, LCF-0716, LCF-0218 and MRF-0540 were all exhausted by the time Plaintiff filed his complaint, and, at the very least, Defendants Ouellette and Abdellatif are mentioned within MRF-540. (DE 43-1 at 1-2, DE 56-1 at 2-3.) To complicate matters, the Court is unable to determine the subjects of MCF-09-05-0401-29z and LCF-11-07-0716-12d3, as these grievances do not appear to be part of the record. The exhaustion of Plaintiff's claims against the Corizon Defendants will be more closely examined when the Court opines on their pending dispositive motion. (DE 43.)

14

(emphasis added)), at least at the time any such "action" or claim was "*brought*" or filed on October 13, 2016. 42 U.S.C. § 1997e(a). The statute is not based upon, as Plaintiff would have it, whether the "action" or claim was *served* or *received*. This is so, even if, as Plaintiff points out, this Court has yet to "rule[] on the merits of any claims against Dr. Borgerding." (DE 60 at 10.)

For these reasons, the Court should conclude that Plaintiff's claims against Defendant Borgerding were unexhausted at the time Plaintiff "brought" his "action" against this Defendant and, accordingly, should dismiss Plaintiff's claims against him. If the Court agrees with this conclusion, then it need not address Defendant Borgerding's remaining arguments concerning personal involvement or Eleventh Amendment immunity. (*See* DE 52 at 15-22, DE 60 at 10-17, DE 61 at 4.)

### 5. The Court should deny the remaining portion of Plaintiff's October 13, 2016 motion for preliminary injunction (DE 3).

At the outset of this case, Plaintiff filed a motion for a preliminary injunction. (DE 3.) "'The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)). The Court considers four (4) factors when deciding whether to issue a preliminary injunction:

15

> (1) whether the movant has a "strong" likelihood of success on the merits;
>
> (2) whether the movant would otherwise suffer irreparable injury;
>
> (3) whether issuance of a preliminary injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (quotations and citation omitted); *see also Newsome v. Norris*, 888 F.2d 371, 373 (6th Cir. 1999).[3] "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary*, 228 F.3d at 736.[4]

On June 6, 2017, following the Undersigned's May 10, 2017 report and recommendation, Judge Cox denied without prejudice Plaintiff's October 13, 2016 motion for preliminary injunction. (DEs 3, 33, 40.) Thereafter, Plaintiff filed an objection to my report and recommendation and a motion for reconsideration of the Court's order. (DEs 42, 45.) In the end, Judge Cox denied Plaintiff's first motion to the extent it sought injunctive relief against Defendants Abdellatif,

---

[3] Or, as the Supreme Court has more prosaically stated it, "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

[4] *See also, Certified Restoration Dry-Cleaning Network, L.L.C.*, 511 F.3d at 542 (6th Cir. 2007) ("These four considerations are 'factors to be balanced, not prerequisites that must be met.'") (internal citations omitted).

16

Jordan, Dominguez-Bem, Ploehn, and Ouellette; however, he returned the motion to me for consideration as to Defendant Borgerding. (DE 59 at 6.) This is so, because, while I had concluded that Plaintiff's transfer to the St. Louis Correctional Facility (SLF) had not mooted his first request for injunctive relief as to Defendant Borgerding, who appeared to be associated with the MDOC's Pain Management Committee, I further stated:

> Nonetheless, it appears that the relief Plaintiff seeks – provision of certain prescriptions - can only be accomplished by the MDOC or one of its agents. Moreover, Defendant Borgerding has yet to appear. At this time, it appearing that the only MDOC defendant in this case is Borgerding, who has yet to appear[.]

(DE 33 at 10.) Borgerding thereafter appeared on June 28, 2017, the same date he filed the instant motion for summary judgment. (DE 51.) As such, the Court returned the issue to me for further consideration, in light of his subsequent appearance in this matter. (*See* DE 59 at 4-5.)

Although Defendant Borgerding – the only MDOC Defendant and the only one Plaintiff did not associate with a particular MDOC facility (*see* DE 1 ¶ 9) - has now appeared, I have reported above that Plaintiff's claims against this Defendant are unexhausted, and, therefore, should be dismissed. If the Court agrees with this recommendation, as well as my other reports and recommendations entered this date, then the only remaining defendant will be contract Defendant Abdellatif, who Plaintiff associates with MRF and against whom Judge Cox has already denied the

17

pending motion for injunctive relief. (*See* DE 59 at 6.) Moreover, as Plaintiff is currently incarcerated at TCF, and, again, assuming the Court accepts all of my recommendations, it appears there would be no remaining Defendant with control over Plaintiff and who could be ordered to supply the medicine and testing requested. (DE 3 at 1, 2, 9.) As such, the Court should deny the remaining portion of Plaintiff's October 13, 2016 motion for preliminary injunction. Moreover, this Court is generally not in the business of second-guessing pharmaceutical prescriptions and ordering contrary courses of medical treatment, it being beyond its professional competency. *Naturalite v. Forner*, No. 10-13564, 2011 WL 4027475, at *3 (E.D. Mich. June 1, 2011), *report and recommendation adopted*, No. 10-CV-13564, 2011 WL 4026806 (E.D. Mich. Sept. 12, 2011) ("By granting the requested injunctive relief in this case, the Court would be in the untenable position of second-guessing and countermanding Defendant's medical and contractual decisions, as well as the MDOC's legitimate prison policies."); *see also Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("This is not to say that every request for medical attention must be heeded nor that courts are to engage in the process of second-guessing in every case the adequacy of medical care that the state provides.").

    **E.**    **Conclusion**

As noted above, Plaintiff failed to properly exhaust his available administrative remedies as to his claims against Defendant Borgerding before filing his October 13, 2016 complaint. Accordingly, the Court should **GRANT** Defendant Borgerding's motion for summary judgment (DE 52) and dismiss Plaintiff's claims against this Defendant. Should the Court do so, the Court should also **DENY** the remaining portion of Plaintiff's motion for injunctive relief (DE 3), as the only portion of this motion to have survived the Court's July 21, 2017 order concerned relief that, apparently, could only be accomplished by the MDOC or one of its agents, and the dismissal of Borgerding from this lawsuit would eliminate the only MDOC Defendant.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

19

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 11, 2017            s/Anthony P. Patti
                                                     Anthony P. Patti
                                                     UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 11, 2017, electronically and/or by U.S. Mail.

                                                       s/Michael Williams
                                                     Case Manager for the
                                                     Honorable Anthony P. Patti