UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LEE BONGA,

               Plaintiff,                        Case No. 2:16-cv-13685
                                               District Judge Sean F. Cox

v.                                     Magistrate Judge Anthony P. Patti

BADAWI ABDELLATIF, *et al*.,

               Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
ABDELLATIF'S MOTION FOR SUMMARY JUDGMENT (DE 79)**

I.     **RECOMMENDATION:**  The Court should **GRANT** Defendant

Abdellatif's January 29, 2018 motion for summary judgment (DE 79) and dismiss

the first amended complaint's claims against him.

II.     **REPORT**

     **A.**    **Background**

     Plaintiff Jeffrey Lee Bonga (#271635) is currently incarcerated at the

Michigan Department of Corrections (MDOC) Earnest C. Brooks Correctional

Facility (LRF).  (DE 84.)  On October 13, 2016, while incarcerated at the MDOC's

Alger Correctional Facility (LMF) in Michigan's upper peninsula, Plaintiff filed

the instant lawsuit, *pro se,* against six defendants:  **(1-4)** Kenneth Jordan, Victor

Dominguez-Bem, M.D., Kyle Ploehn, P.A., and Margaret Ouellette, P.A., each of

1

Lakeland Correctional Facility (LCF); **(5)** Badawi Abdellatif, M.D., of Macomb

Correctional Facility (MRF) and **(6)** William C. Borgerding, whose location is not

provided.  (DE 1 ¶¶ 8-13; *see also* DE 11, DE 17.)  Plaintiff's May 26, 2017 first

amended complaint includes these six Defendants and adds two Defendants:  **(7)**

K. Parsons; and, **(8)** L. Scott.  (DE 37 ¶¶ 12-19.)

Although the amended complaint was stricken on December 11, 2017, it was

reinstated on March 8, 2018.  (DEs 70, 88.)  On March 14, 2018, the Court

dismissed with prejudice the claims against Defendant Jordan as time-barred, and

dismissed the claims against Defendants Dominguez-Bem, Ploehn, Ouellette and

Borgerding for failure to exhaust administrative remedies.  (DE 90.)  Thus, the

only remaining, active Defendants are Abdellatif, Parsons and Scott.

## B.   Instant Motion

Judge Cox has referred this case to me for all pretrial proceedings.  (DE 9.)

Currently before the Court is Defendant Abdellatif's January 29, 2018 motion for

summary judgment.  (DE 79.)  Relying upon his own affidavit and Plaintiff's

medical records, Defendant Abdellatif seeks dismissal with prejudice of the claims

against him.  (DE 79 at 2, 16-18.)[1]  Plaintiff filed a timely, verified response on

March 8, 2018.  (DEs 83, 87.)  On March 13, 2018, Defendant Abdellatif filed a

reply.  (DE 89.)

---

[1] Defendant sought and received permission to file Plaintiff's attached medical
records under seal.  (*See* DEs 79-1, 80, 81.)

### C.     Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under Swierkiewicz and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382

F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when

opposing summary judgment, a party cannot rely on allegations or denials in

unsworn filings and that a party's "status as a pro se litigant does not alter [this]

duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F.

App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353,

354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff

because he "failed to present any evidence to defeat the government's motion").

### D.    Analysis

#### 1.    Plaintiff's MRF medical records

According to Plaintiff, Harish Rawal, M.D., performed an anterior fusion at

C5-C7 on April 24, 2012.  (DE 37 at 6 ¶ 32; DE 81-1 at 9.)  On March 10, 2015,

Plaintiff was transferred from LCF to MRF, at which time Plaintiff was evaluated

by Cynthia J. McInnis, RN, and "cleared to General Housing."  (DE 37 at 7 ¶ 35,

DE 81-1 at 1-2.)

##### a.    Treatment by Defendant Abdellatif

During what appears to have been a nearly 14-month stay at MRF, Dr.

Abdellatif examined Plaintiff or reviewed his chart at least seven times, and these

instances were interspersed with treatment and/or review by other medical

professionals:

> 1.    Dr. Abdellatif's **March 16, 2015** musculoskeletal examination
>       was positive for back pain and bone/joint symptoms.  Yet, in

the end, Dr. Abdellatif noted that Plaintiff's examination was "normal[,]" and he advised Plaintiff "to continue same pain meds and exercise, call for any problems[.]"  (DE 81-1 at 3-5; *see also* DE 79-2 ¶¶ 3-6.)

2.      On **April 2, 2015**, Dr. Abdellatif did not renew Pamelor.  (DE 81-1 at 6-7; *see also* DE 79-2 ¶ 7.)  On May 9, 2015, Plaintiff refused "an ice detail or Ibuprofen . . . [;]" requested pain management medication; was instructed to stretch; and, received a follow up nurse's appointment.  (DE 81-1 at 8; *see also* DE 79-2 ¶ 8.)  On May 12, 2015, Plaintiff saw Jaimie E. Cates, R.N., to "recheck back pain[,]" and Plaintiff rated his daily "average pain level" as an 8/10.  It seems he was to request sick call "if symptoms do not subside or become more severe[.]"  (DE 81-1 at 9-10; *see also* DE 79-2 ¶ 9.)

3.      Dr. Abdellatif's **May 14, 2015** chart review suggests that November 11, 2013 nurse notes explain why Plaintiff's pain management medication was stopped (although the Court has not located such notes in the record of this case).  (DE 81-1 at 11; *see also* DE 79-2 ¶ 10.)  In her June 23, 2015 notes, Caroline M. Rivard-Babisch, R.N., documented that Plaintiff "continues to experience Chronic Back pain, 8/10," and is "not sleeping."  An appointment was scheduled for June 26, 2015.  (DE 81-1 at 12-16; *see also* DE 79-2 ¶ 11.)

4.      On **July 2, 2015**, Dr. Abdellatif examined Plaintiff.  Straight leg raising test was negative, and Plaintiff had full strength in his upper and lower extremities.  Noting a "normal exam," Dr. Abdellatif maintained the same treatment regimen, which is presumably a reference to the March 16, 2015 instructions/education.  (DE 81-1 at 17-18; *see also* DE 81-1 at 5, DE 79-2 ¶ 12.)

5.      On **August 10, 2015**, Dr. Abdellatif renewed Plaintiff's Zantac prescription.  (DE 81-1 at 19; *see also* DE 79-2 ¶ 13.)

6.      On **August 25, 2015**, Plaintiff saw Dr. Abdellatif for gastrointestinal reasons, although the musculoskeletal exam revealed back pain and referred to the July 2, 2015 notes.  Dr.

Abdellatif prescribed Tylenol 325mg, one tablet twice a day as needed, seemingly for chronic neck pain.  (DE 81-1 at 20-23; *see also* DE 79-2 ¶¶ 14-15.)  In January 2016, Plaintiff stated that his "upper and lower back [was] getting worse . . . [,]" and, on a sale of 1-10, his pain was an "8-9."  (DE 81-1 at 24.)  On January 12, 2016, he had a nurse's visit and was instructed to "change positions frequently, especially when working on [a] computer[,]" and "[u]se warm compresses for cervical neck stiffness."  The nurse planned to schedule an appointment with the medical services provider (MSP), perhaps because Plaintiff reported that "Tylenol does not help his pain," and "request[ed] pain management."  (DE 81-1 at 25-27; *see also* DE 79-2 ¶ 16.)

7.    On **February 5, 2016**, Defendant Abdellatif renewed Plaintiff's Zantac prescription.  (DE 81-1 at 28; *see also* DE 79-2 ¶ 17.)

Defendant Abdellatif attests that this was the extent of his "involvement with Mr. Bonga's care as it relates to the allegations in his Complaint . . . ."  (DE 79-2 at 4 ¶ 18.)

### b.    Subsequent treatment

On February 22, 2016, Kim R. Farris, PA, renewed Plaintiff's Tylenol 325mg prescription.  (DE 81-1 at 29.)  On March 23, 2016, Plaintiff complained of "musculoskeletal pain that is not being controlled by Tylenol and the use of warm compresses."  He requested "to be evaluated by the PMC[,]" the Pain Management Committee, and a referral was made "to Midlevel for PMC application."  (DE 81-1 at 30.)

On April 8, 2016, Plaintiff had a chronic care visit with Patricia A. Schmidt, D.O. for gastrointestinal and musculoskeletal reasons.  Among other things, she

diagnosed Plaintiff with cervical spondylosis and backache, each of which was considered "fair[,]" and apparently scheduled another chronic care clinic appointment for July 8, 2016.  (DE 81-1 at 31-34.)  Dr. Schmidt also requested evaluation for pain management.  (DE 81-1 at 35-36.)  In an April 15, 2016 addendum, William C. Borgerding, D.O. reported the PMC's directions of:  **(a)** Tylenol up to 2 gm/day; **(b)** formulary NSAID of choice up to maximum dose, rotating once every 3-4 months; **(c)** self massage, heat, range of motion and stretching exercises; and, **(d)** encourage walking up to 20-40 minutes, apparently once or twice a day.  (DE 81-1 at 37.)  Four days later, on April 19, 2016, Kim R. Farris, P.A., adjusted Plaintiff's Tylenol 325 mg prescription.  (DE 81-1 at 38-39.)

On May 5, 2016, Plaintiff was transferred from MRF to Muskegon Correctional Facility (MCF).  (DE 37 at 7 ¶ 39, DE 81-1 at 40-41.)  Shortly thereafter, on May 18, 2016, Plaintiff underwent spinal x-rays, which revealed, among other things, "[a]t least a grade 2 and possibly a grade 3 spondylolisthesis with bilateral spondylolysis at L5 level."  (DE 87 at 18.)  The November 30, 2016 notes from Dr. Rawal's office discuss the results of a June 1, 2016 cervical spine x-ray, an August 18, 2016 bilateral upper extremity EMG, and an October 12, 2016 MRI of the lumbar spine.  (DE 87 at 12.)  Dr. Rawal suggested "decompression from L4-S1 . . . ."  (DE 87 at 15.)

### 2.   Plaintiff's May 26, 2017 claims against Defendant Abdellatif

Plaintiff sues Defendant Abdellatif in his individual and official capacities. (DE 37 ¶¶ 12, 20.)  Plaintiff's claims against Abdellatif concern alleged false or erroneous statements in records dated March 16, 2015, April 02, 2015, July 2, 2015, and August 25, 2015.  (DE 37 ¶¶ 36, 37.)  In a section of his amended complaint entitled, "denial of medical care," Plaintiff further alleges:

> When Mr. Bonga told Dr. Abdellatif of these injuries and the constant and sever[e] pain that these injuries cause[], Dr. Abdellatif informed him that due to his good muscle tone, Mr. Bonga was fine and that there was nothing wrong it him.  He also told him that he could perform any physical activity that he wanted to do, due to him being physically fit.

> As Mr. Bonga's x-rays have shown, Dr. Abdellatif was deliberately indifferent to his serious medical needs by failing to treat and request further diagnostic testing to properly diagnose Mr. Bonga's vertebral injuries.  Mr. Bonga's serious medical needs should have been clear to Dr. Abdellatif by simply reviewing Mr. Bonga's medical file and the results of the earlier performed diagnostic test results (MRI, CT-scan, x-rays, etc.).

> Defendant Dr. Abdellatif was responsible for medical care generally and for arranging for specialized medical care outside of the prison.

(DE 37 ¶¶ 69, 70, 71.)  Plaintiff later alleges:

> The failure of Defendant Dr. Badawi Abdellatif MD to provide adequate medical treatment for Mr. Bonga's vertebral injuries, constitutes deliberate indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

(DE 37 ¶ 85.)  As to Defendant Abdellatif, Plaintiff seeks declaratory, compensatory and punitive relief.  (DE 37 ¶¶ A(1), C(1), D(1).)

9

### 3.   Eighth Amendment deliberate indifference to a serious medical need

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs . . . ."  *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008).  "A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components."  *Phillips*, 534 F.3d at 539; *see also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001)).  As the Supreme Court has instructed in *Farmer v. Brennan*, 511 U.S. 825 (1994):

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.  Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met.  *First*, the deprivation alleged must be, objectively, "sufficiently serious," . . . ; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," . . . .  For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  . . .

> The *second* requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  . . . In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, . . . a standard the parties agree governs the claim in this case.

*Farmer*, 511 U.S. at 834 (emphases added, internal footnote and internal citations omitted).  The Court then went on to set forth the test for deliberate indifference:

> . . . a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and *disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he *should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id*. at 837–838 (emphasis added).  "[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."  *Id*. at 839–840.

### 4.  Plaintiff disputes the adequacy of treatment by Defendant Abdellatif.

According to Defendant Abdellatif, "[t]he medical record demonstrates that [he] provided Mr. Bonga with *appropriate* medical care."  (DE 79 at 2 ¶ 3 (emphasis added).)  The Undersigned is not a physician, and, therefore, will refrain from opining on the *appropriateness* of the care provided.

Nonetheless, I agree with Defendant's characterization of Plaintiff's claims as disagreement(s) with the medical care provided.  (DE 79 at 17.)  As discussed above, Plaintiff alleges that Defendant Abdellatif made false or erroneous statements in records from four scheduled provider visits.  In particular, Plaintiff

challenges the veracity of Dr. Abdellatif's March 16, 2015 notes that Plaintiff's examination was "normal," and that he advised Plaintiff "to continue same pain meds and exercise[.]"  (DE 37 at 7 ¶ 36, DE 81-1 at 5.)  Plaintiff also challenges the accuracy of Dr. Abdellatif's statement that Plaintiff "admits to [weight] lifting [until] 3 months ago," as well as the repetition of this statement within later notes. (*Id.*; *see also* DE 81-1 at 6, 18.)  According to Plaintiff:

> Mr. Bonga did in fact inform Dr. Abdellatif that when he attempted to work out 3 months ago, he was "unable to get out of his bunk for 3 days, due to the chronic upper and lower back pain."  Dr. Abdellatif informed Mr. Bonga that he "would always have back pain and that he would just have to deal with it.  There was nothing he could do for Mr. Bonga"

(DE 37 at 7 ¶ 37.)

Even if Plaintiff disputes whether Dr. Abdellatif gave him advice on March 16, 2015, or whether he gave it at all, and even if Dr. Abdellatif inaccurately recorded Plaintiff's statement about weight-lifting, it remains that Dr. Abdellatif performed an examination and made a medical judgment that the results were "normal."  (*See* DE 81-1 at 3-5, DE 79-2 ¶¶ 3-6, 19; *see also* DE 81-1 at 6, 18.) Any challenge by Plaintiff to this conclusion is a *disagreement* with the assessment.  Perhaps more importantly, Plaintiff himself admits he "was seen by medical staff, including Dr. Abdellatif[,] 'plenty of' times."  (DE 87 at 5.)  Dr. Abdellatif's alleged statements that "[t]here was nothing he could do for [Plaintiff][,]" or that "there was nothing wrong with [Plaintiff][,]" or Dr.

12

Abdellatif's alleged failure to "request further diagnostic testing to properly

diagnose [his] vertebral injuries[,]," are not allegations of a "fail[ure] to treat."  (DE

37 ¶¶ 37, 69, 70.)  They are *disagreements* with the medical care provided.  The

same is true of Plaintiff's claim that his condition "should have been clear to Dr.

Abdellatif by simply reviewing [Plaintiff's] medical file and the results of the

earlier performed diagnostic test results . . . ."  (DE 38 at 15 ¶ 70.)[2]  As the

Supreme Court has instructed:

> . . . a complaint that a physician has been negligent in diagnosing or
> treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment. Medical malpractice does
> not become a constitutional violation merely because the victim is a
> prisoner. In order to state a cognizable claim, a prisoner must allege
> acts or omissions sufficiently harmful to evidence deliberate
> indifference to serious medical needs.

*Estelle*, 429 U.S. 97, 106 (1976).

That Plaintiff disputes the adequacy of Dr. Abdellatif's treatment is

buttressed by his "claims of relief," which complain of Dr. Abdellatif's failure "to

provide *adequate* medical treatment for Mr. Bonga's vertebral injuries[.]"  (DE 37

¶ 85 (emphasis added).)  This characterization of Plaintiff's claims is also

buttressed by his "relief requested," which seeks declaratory and compensatory

---

[2] The dates of the "earlier performed" exams to which Plaintiff is referring are
unclear; however, the Court suspects that Plaintiff is referring to the March 27,
2009 CT scan, the February 2, 2011 cervical and thoracic spine x-rays, and the
December 19, 2011 MRI described within his first amended complaint.  (DE 37 ¶¶
28, 30, 31.)

relief against Defendant Abdellatif, among others, for failing "to provide adequate medical care . . . ." (DE 38 at 20-21 ¶¶ A(1), C(1).)  It is also supported by his response, wherein he claims that, "[i]f Dr. Abdellatif would have *properly* examined Mr. Bonga (by x-ray, mri, ct-scan), he would have discovered the severity of damage to Mr. Bonga's L5 vertebra." (DE 87 at 6 (emphasis added).) "Where a prisoner has received some medical attention and the dispute is over the *adequacy* of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (emphasis added).

### 5.   Plaintiff has not shown deliberate indifference as to Defendant Abdellatif.

Plaintiff responds that Dr. Abdellatif's "inadequate medical care" evidences "a deliberate indifference to his serious medical needs[,]" contending that the treatment was "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). (*See also* DE 87 at 4-6.) In Plaintiff's opinion, "[i]f Dr. Abdellatif would have treated [his] lumbar injuries, Dr. Rawal[] would have had a higher chance of success – to achieve [i]mprovement in [his] lumbar vertebr[ae]." (DE 87 at 5.)  Instead, he "was exposed to undue suffering and a tangible residual injury . . . ." (*Id.*)

Much of Plaintiff's response focuses on the delay in treatment.  "'An inmate who complains that delay in medical treatment rose to a constitutional violation

14

must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (*overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002))).  To that end, Plaintiff submits Dr. Rawal's November 30, 2016 notes as his "verifying medical evidence."  (DE 87 at 7-8, 12-16.)

However, the requirement to place verifying medical evidence in the record "does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004).  Plaintiff alleges that his "severe vertebral injuries" are "clear" from his x-rays, MRI and CT scans and/or his medical file, and he considers his Grade 3 spondylosis to be "an obvious medical emergency . . . ." (DE 37 ¶¶ 68, 70; DE 87 at 5.)  As Plaintiff correctly notes, "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity.  In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition." *Blackmore*, 390 F.3d at 899.

15

Thus, in a sense, Plaintiff claims that he is not required to produce verifying medical evidence but plays it safe by pointing to alleged medical record support for his claim.  Nonetheless, Defendant Abdellatif attests that he treated Plaintiff "in a manner that [he], in [his] medical judgment, fe[lt] was appropriate[,]" (DE 79-2 ¶ 19), and, on the record before it, the Court has no reason to doubt this representation.

In the operative pleading, Plaintiff complains that the delay in treatment of his Spondylolisthesis grade 2 or 3, has caused him "to permanently suffer sciatica pain shooting down his left leg."  In so doing, he specifically references an initial diagnosis in 2009 and degeneration "seven years later" with "L5 dislocated 15mm."  (DE 37 at 17 ¶¶ 44, 45, 80.)  This appears to be a reference to Plaintiff's May 18, 2016 spinal x-rays, which were taken less than two weeks after his transfer from MRF to MCF and which showed:  **(a)** "[a]n anterior cervical fusion of C5, 6 and 7 levels which is stable[,]" as well as the presence of "[a]natomical alignment and apposition . . . [;]" **(b)** the presence of "[e]arly arthritic changes [in] the vertebral bodies of the thoracic spine[;]" and, **(c)** "[a]t least a grade 2 and possibly a grade 3 spondylolisthesis with bilateral spondylolysis at L5 level[,]" and the presence of "[a]dvanced degenerative disk changes . . . at L5/S1 level."  (DE 87

at 18; *see also* DE 37 at 8-9 ¶ 40.)[3]  Plaintiff claims he did not learn of the results

of these x-rays until after his July 12, 2016 transfer from MCF to LMF.  (DE 37 ¶¶

42, 44-4568.)

However, while Plaintiff complains of suffering during the seven-year delay

between his initial 2009 spondylosis diagnosis and his Stage 2-3 diagnosis in May

2016 (*see* DE 37 ¶¶ 28, 80), or the eight-year delay until his January 12, 2017

surgery (*see* DE 87 at 5, DE 81-1 at 42), these lengths cannot be attributed to Dr.

Abdellatif, whose treatment of Plaintiff occurred during his nearly 14-month stay

at MRF, which, by Plaintiff's own allegations, did not begin until March 10, 2015

and concluded on May 5, 2016.  (DE 37 ¶¶ 35-39.)  It seems that, at most,

Defendant Abdellatif could only have been responsible for that 14-month period.

In any event, aside from Defendant Abdellatif's April 2, 2015 decision to

not renew the prescription for Pamelor or the various requests for pain

management in May 2015, June 2015, January 2016, Dr. Schmidt's April 8, 2016

referral to the PMC resulted in a decision to prescribe Tylenol up to 2 gms per day

and a formulary non-steroidal anti-inflammatory drug (NSAID) up to the

maximum dose, as well as exercises and walking, among other things.  (DE 81-1 at

6-7, 8-9, 14, 26, 33, 35, 37.)  This is not markedly dissimilar from Defendant

---

[3] Here, Plaintiff does not appear to be referring to the later, June, August and
October 2016 diagnostic testing referenced in Dr. Rawal's November 30, 2016
notes.  (DE 87 at 12.)

Abdellatif's August 25, 2015 instructions to follow an exercise program and order for Tylenol 325 Mg, one tablet, twice per day, as needed.  (DE 81-1 at 22-23.)  As Defendant Abdellatif points out, the PMC's recommendation is "very similar" to his treatment plan.  (DE 79 at 17-18; *see also* DE 89 at 2.)

On November 30, 2016, approximately seven months after the PMC's recommendation, Harish Rawal, M.D., suggested decompression from L4-S1, and Plaintiff's lumbar laminectomy appears to have taken place less than two months thereafter, on January 12, 2017.  (DE 87 at 12-16, DE 81-1 at 42; *see also* DE 37 ¶¶ 51-52.)[4]  Plaintiff draws the Court's attention to Dr. Rawal's November 30, 2016 statement that he "may not be able to achieve any improvement in view of the severity and probable calcification[.]"  (DE 37 ¶ 80; DE 87 at 6, 15.)  However, even if this is evidence that Plaintiff's "L5 vertebra was *neglected* for so long that Dr. Rawal[] did not think that he could repair the damage or lessen Mr. Bonga's pain[,]" (DE 87 at 6 (emphasis added)), it is not – alone - evidence of *deliberate indifference*, and the record before the Court shows multiple instances of treatment by Dr. Abdellatif.  While Plaintiff may disagree with the course or adequacy of the treatment provided, it cannot readily be characterized as *indifferent*.  Nor can it be

---

[4] While the parties calculate differently, it seems to the Court that approximately *15 months passed* between Plaintiff's last, August 25, 2015 visit with Dr. Abdellatif and Dr. Rawal's November 30, 2016 suggestion or that approximately *17 months passed* until the January 12, 2017 surgery.  (*Compare* DE 79 at 18, DE 87 at 6.)

characterized as tantamount "to no treatment at all."  *Westlake v. Lucas*, 537 F.2d

at 860 n.5

Plaintiff also contends that Dr. Rawal verbally informed him that "if he

would have seen Mr. Bonga 5 years earlier, he would have positively been able to

repair the damage[,]" and later, on March 1, 2017, informed him that "because of

the severity of the slippage of his L5 vertebra, he will have to endu[r]e sciatica

pain for the rest of his life."  (DE 87 at 6, 9; DE 37 ¶ 56.)  These statements are

inadmissible hearsay, *see* Fed. Rules Evid. 801(c), 802, notwithstanding the fact

that Plaintiff's first amended complaint and response are each signed under penalty

of perjury.  (DE 37 at 21, DE 87 at 9-10.)  Without admissible evidence in support

of causation, it is difficult to conceive of how Plaintiff could prove the debilitating

effect of the alleged delay in treatment on his condition; *i.e.*, that the delay caused

his alleged damages.  More to the point, assuming the earlier statement was made

either on November 30, 2016 or at the time of the January 12, 2017 surgery, five

years earlier would have been November 2011 or January 2012, which was *prior*

*to* the April 24, 2012 surgery and well before Defendant Abdellatif's initial, March

16, 2015 examination.  (DE 37 ¶¶ 32, 51-52; *see also* DE 89 at 2.)

Plaintiff additionally contends that he "expressed the same level of pain to

Dr. Abdellatif" at MRF "as he did to PA Barbara B[ie]n" at MCF on May 17,

2016.  (DE 87 at 7, DE 37 ¶ 40.)  According to Plaintiff, the May 18, 2016 x-rays

19

"discovered the severity of [his] vertebral injuries."  (DE 87 at 7, 18.)  Whatever difference there was between Dr. Abdellatif's opinion and that of PA Bien, even Plaintiff seems to acknowledge that Defendant Abdellatif's window of treatment lasted for the five-month period from his initial, March 16, 2015 visit through the February 5, 2016 chart review.  (DE 87 at 7.)  As the foregoing time-line explains, Defendant Abdellatif did not "fail[] to even treat this pain."  (*Id.*)  Instead, he "reasonably treated Mr. Bonga with conservative treatment (pain medication and exercise) to manage his pain."  (DE 89 at 2.)  Consistently, Dr. Rawal's November 30, 2016 notes document that NSAIDs, Naproxen, and recommended exercises did not provide relief of Plaintiff's symptoms from lumbar spondylolisthesis.  (DE 89 at 2-3.)

Whatever exacerbation of vertebral injuries or prolonged pain Plaintiff experienced during "the time he was under the care of Dr. Abdellatif[,]" (DE 87 at 8), it is, at most, the subject of a professional negligence or medical malpractice claim.  Plaintiff asks the Court to interpret Dr. Abdellatif's records as "[a] refusal to provide medication and timely treatment . . . ."  (*Id.*)  This is simply not the case here.

### E.    Conclusion

Plaintiff claims that various lumbar spine diagnostic tests prove "that he has been forced to endure excruciating pain . . . [,]" and "the severity of [hi]s vertebral

injuries . . ." during the time that he was under Dr. Abdellatif's care.  (DE 87 at 8.)

In Plaintiff's lay opinion, an order for lumbar x-rays "was warranted at every

examination conducted by Dr. Abdellatif," which "might have" allowed Dr. Rawal

"to achieve improvement" to Plaintiff's "slipped L5 . . . [.]"  (DE 87 at 8-9.)

Instead, Plaintiff contends, he "has to undergo yet another surgery to attempt to

repair the damage to [his] Lumbar ver[t]ebra."  (DE 87 at 9.)

Yet, even if Plaintiff was suffering from Grade 3 spondylosis at the time of

his March 10, 2015 through May 5, 2016 incarceration at MRF, and even assuming

this condition meets the *objective* element of a "serious medical need," there "is no

genuine dispute as to any material fact . . . [,]" Fed. R. Civ. P. 56(a), on the

*subjective* element of an Eighth Amendment claim.  In other words, Defendant

Abdellatif's aforementioned, multiple treatment instances over the course of

Plaintiff's 14-month stay at MRF do not support a conclusion that Defendant was

deliberately indifferent to Plaintiff's vertebral condition.  Here, although Plaintiff

argues otherwise, there was no "failure to diagnos[e] and treat Mr. Bonga's serious

medical needs . . . ."  (DE 87 at 7.)  If he was subjected to "unnecessary infliction

of pain" as the result of Defendant Abdellatif's chosen and *conservative* course of

treatment for what Plaintiff labels an "obvious medical emergency," such a claim

sounds in medical malpractice, a state law claim for which Plaintiff has not

21

fulfilled the statutory requirements and over which the Court should not exercise supplemental jurisdiction in any case. *Estelle*, 429 U.S. at 106.[5]

Plaintiff argues otherwise, but, the Court agrees with Defendant Abdellatif that "Plaintiff's claims are tantamount to a disagreement with the treatment provided and do not constitute an Eighth Amendment claim." (DE 87 at 6, DE 89 at 3.) Accordingly, the Court should **GRANT** Defendant Abdellatif's motion for summary judgment and dismiss the first amended complaint's claims against him.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

---

[5] In order to pursue a medical malpractice claim under Michigan law, a plaintiff must have served a pre-suit Notice of Intent letter and must support his complaint with an Affidavit of Merit from an appropriate medical professional, except in the rare case of *res ipsa loquitor*. *See* Mich. Comp. Laws §§ 600.2912b and 600.2912d.

22

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 2, 2018                    s/*Anthony P. Patti*
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on July 2, 2018, electronically and/or by U.S. Mail.